UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARTHA WRIGHT, et al.          :
                              :
        Plaintiffs,           :
                              :
        v.                    :     Civil Action
                              :     No. 00-293 (GK)          **FILED**
CORRECTIONS CORPORATION OF    :
AMERICA, et al.,              :                              AUG 2 2 2001
                              :
        Defendants.           :                        NANCY MAYER WHITTINGTON, CLERK
_____:                            U S  DISTRICT COURT

### MEMORANDUM OPINION

This matter is before the Court on the Motions to Dismiss Plaintiffs' Complaint by Defendant telephone companies and Defendant Corrections Corporation of America ("CCA").  Upon consideration of the motions, oppositions, replies, the Motions Hearing held on August 9, 2001, and the entire record herein, for the reasons stated below, the Court **grants** the Motions to Dismiss the Complaint under the doctrine of primary jurisdiction.[1]

## I. BACKGROUND

This case involves a putative class-action challenge to the rates and terms arising from the long distance telephone service arrangements between telephone companies and prison facilities operated by the Corrections Corporation of America, Inc. ("CCA").

---

[1] The Court sincerely appreciates the informative and thoughtful contribution of Mr. John E. Engles, Deputy Associate General Counsel, Federal Communications Commission, during the Motions Hearing.

Plaintiffs may be divided into two groups: (1) inmates incarcerated at CCA facilities; and (2) family members, legal counsel and other recipients of inmate calls. Defendants are CCA[2] and various telephone companies.[3]

Specifically, Plaintiffs challenge the "exclusive dealing contracts" between CCA facilities and Defendant telephone companies. Under these contracts, each CCA facility grants to one telephone company the exclusive right to provide telephone services to that facility's inmates; in return, CCA receives a commission ranging from 25-50% of the revenues generated by the telephone companies from inmate calls. The exclusive dealing contracts further provide that the only way inmates may communicate by telephone is through a collect call-only feature, which charges the highest operator assisted rate.[4] Inmates cannot receive calls from outside the facility, and neither inmates nor recipients of

_____

[2]CCA is a private for-profit corporation which operates eighty prisons and jails in twenty-six states pursuant to agreements with state and local governments. CCA owns and operates four institutions housing D.C. prisoners: Central Arizona Detention Center; the Torrance County, New Mexico, Detention Center; Northeast, Ohio Correctional Center; and District of Columbia Correctional Treatment Facility.

[3] Defendant telephone companies are Evercom Inc. ("Evercom"), American Telephone and Telegraph Company ("AT&T"), MCI Worldcom Communications Inc. ("MCI"), Pioneer Telephone Corporative ("Pioneer") and Global Telecommunications Link ("Global Tel Link").

[4] Plaintiffs allege, for example, that for a typical long-distance call, a Plaintiff must pay an initial surcharge of $4.00 and then $.55 per minute thereafter.

2

inmate calls are permitted to use other long-distance carriers or take advantage of less-expensive calling options for inmate-initiated calls.[5]

Plaintiffs allege that these exclusive dealing contracts have resulted in exorbitant and unconscionable long distance rates, which severely burden communication between inmates and their family members and counsel.   They also claim that the terms of these contracts, rather than furthering any security purpose or covering the cost involved in providing phone service to inmates, are primarily designed to enrich Defendants (through the inflated rates and high commission fees) at the expense of the recipients of inmate calls.   They allege violations of the First Amendment, Fourteenth Amendment, Sherman Anti-Trust Act, 15 U.S.C. § 1 <u>et seq.</u>, Communications Act, 47 U.S.C. § 151 <u>et seq.</u>, and D.C. state law.   Plaintiffs seek monetary damages and an injunction against the exclusive dealing contracts.   All Defendants have moved to dismiss the Complaint for failure to state a claim and/or for lack of jurisdiction.

---

[5] For example, Plaintiffs allege that they are prohibited from using calling features such as direct-dial, dial around, and 1-800-COLLECT, all of which would result in rates considerably cheaper than the collect call-only rates mandated by the exclusive dealing contracts. <u>See</u> Pls.' Opp'n at 2; Compl. ¶¶ 9-15, ¶¶ 42-45, ¶¶ 51-72.  They also allege that debit cards are not permitted in most CCA facilities, even though debit cards are regularly used in prisons operated by the Federal Bureau of Prisons.  <u>See</u> Pls.' Opp'n, Ex. A ("Federal Bureau of Prisons Memorandum").

## II. STANDARD OF REVIEW

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Davis v. Monroe County Bd. of Educ., 119 S. Ct. 1661, 1676 (1999). For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Shear v. National Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979).

## III. DISCUSSION

Defendants raise a number of jurisdictional bars to reaching the merits of this case.[6] Among other things, they urge that the Court should exercise its discretion to refer Plaintiffs' action to the FCC under the doctrine of primary jurisdiction. Specifically, Defendants argue that Plaintiffs' suit is primarily a challenge to the reasonableness of the collect call-only phone rates charged. Defendants maintain that because the FCC is statutorily charged with evaluating and regulating the reasonableness of phone rates, it is the forum best-suited to resolve Plaintiffs' claims.

The doctrine of primary jurisdiction is properly invoked in

---

[6] Defendants Global, AT&T, and Pioneer assert that the Complaint should be dismissed for lack of personal jurisdiction. Defendant AT&T also asserts that the action should be dismissed against it for failure to join an indispensable party.

situations where a court has jurisdiction over a claim or case but it is likely that the case will require "resolution of issues, which, under a regulatory scheme, have been placed in the hands of an administrative body."   See Western Pacific R.R. Co., 352 U.S. 59, 64 (1956).   Referral to the administrative agency does not deprive a court of jurisdiction, and a court has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice.   Reiter v. Cooper, 507 U.S. 258, 268 (1992).

No rigid formula exists for applying the doctrine of primary jurisdiction.   Instead, invocation of the doctrine rests both on the advantages of allowing an agency to apply its expert judgment and on a concern for achieving uniform outcomes.   Allnet Communications Service, Inc. v. National Exchange Carrier Association, Inc., 965 F.2d 1118 (D.C. Cir. 1992).   Expert judgment extends to policy judgments needed to implement an agency's mandate. Id. at 1120.   Applying these principles to the case at hand, the Court concludes that Plaintiffs' claims are best resolved by initial consideration by the FCC and application of the primary jurisdiction doctrine.

**A. Advantages of Agency Expertise**

Although Plaintiffs have advanced numerous constitutional and statutory claims in this action, what is common to all is the complaint that the rates contained in the exclusive dealing

contracts between CCA and Defendant phone companies are unreasonable. Plaintiffs allege that those rates are inflated in part because of the 25-50% commissions received by Defendant CCA. Any remedy would require the Court to order one of two arrangements: (1) that the exclusive dealing contracts contain lower phone rates; or (2) that CCA offer inmates a choice of phone carriers or calling options.

Either arrangement, however, would require a determination of complex economic and technical issues, such as whether telephone rates can be lowered or whether the alternative telephone arrangements Plaintiffs seek are technologically feasible given the exigencies of the prison environment. As explained below, these are issues that have been and continue to be best addressed by the FCC.[7]

First and foremost, the FCC is statutorily charged with handling all claims contesting the reasonableness of telephone rates. 47 U.S.C. § 201(b)("All charges, practices, classifications, and regulations...shall be just and reasonable...[.]"). Consequently, courts routinely refer rate challenges to the FCC. See e.g., Ambassador, Inc. v. U.S. 325 U.S.

---

[7] During the Motions Hearing, the Court asked Plaintiffs' counsel to propose a remedy that would redress the injuries in this case. See August 9, 2001 Motions Hearing Transcript ("Motions Hearing Tr.") at 24:17-26:19. The inability of counsel to articulate a remedy that this Court could enter demonstrates the complexity of the issues involved and the need for FCC guidance on how best to resolve this matter.

317, 324 (1945)(holding that "where the claim of unlawfulness of a [tariffed] regulation is grounded in lack of reasonableness, the objection must be addressed to the [FCC]"); Western Pacific R.R. Co., 352 U.S. at 68-70 (holding that "both the issues of tariff construction and the reasonableness of the tariff as applied were initially matters for the [agency's] determination"); AT&T Co. v. IMR Capital Corp., 888 F.Supp. 221, 244 (D. Mass. 1995)("[t]here is no doubt that a determination of the reasonableness or discriminatory nature of common carrier rules and charges is squarely at the heart of the FCC's mandate").[8]

Significantly, the FCC, in exercising its mandate to regulate the reasonableness of rates, is authorized to reject inclusion in Defendants' cost-basis of the 25-50% commissions received by CCA. Therefore, insofar as Plaintiffs' challenge is to the commissions received by CCA and the impact those commissions have on increasing rates, the FCC can adequately address those issues by prohibiting long-distance carriers from considering commission costs in their cost-basis.   See Motions Hearing Tr. at 48:16-49:8 (FCC has authority to order that Defendants' rates not reflect commissions

_____

[8]   Contrary to Plaintiffs' contention, the D.C. Circuit's recent decision in MCI Worldcom, Inc. v. FCC, 209 F.3d 760 (D.C. Cir. 2000) does not affect the FCC's jurisdiction to regulate the rates of long-distance carriers.   The D.C. Circuit decision prohibited the filing of tariffs for long-distance carriers, but in no way altered the FCC's statutory duty to ensure that the rates of those carriers are reasonable and non-discriminatory. See Motions Hearing Tr. at 8:9-20; 11:5-12.

or other considerations in cost-basis).

Second, Congress has given the FCC explicit statutory authority to regulate inmate payphone services in particular. 47 U.S.C. § 276(d) (providing authority to FCC to regulate payphone service, including "the provision of inmate telephone service in correctional institutions."). Indeed, the FCC has considered and continues to consider the issue of inmate calling services. See In the Matter of Billed Party Preference For Interlata 0+ Calls, Second Further Notice of Proposed Rulemaking, CC Docket No. 92-77, 11 F.C.C. Rcd. 7274 (rel. June 6, 1996) (declining to require billed party preference in the prison context for security reasons)(Attached as Ex. 18 to Def. AT&T's Mot. to Dismiss); In the Matter of Billed Party Preference For Interlata 0+ Calls, 13 F.C.C. Red 6122, Second Report and Order, CC Docket No. 92-77 (rel. Jan. 29, 1998)(declining to impose price benchmarks or rate caps)(Attached as Ex. 19 to AT&T's Mot. to Dismiss). The FCC therefore has already developed the necessary specialized expertise on the underlying telephone technology, the telephone industry's economics, practices and rates, and the feasibility of alternative phone systems that provide adequate security measures.

Third, the FCC has the explicit statutory authority to consider the reasonableness of Plaintiffs' request to have access to other calling options, such as 1-800 services and dial around. See Motions Hearing Tr. at 19:15-24 (the statutory requirement that

carriers make services available upon reasonable request provides the FCC with authority to determine whether Plaintiffs' request for different calling options is reasonable); 47 U.S.C. 201(a)("It shall be the duty of every common carrier . . . to furnish such communication service upon reasonable request.").[9]

Fourth, the FCC is currently considering challenges to the very same rates and practices challenged by Plaintiffs in this action. <u>In the Matter of Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996</u>, Public Notice, CC Docket, No. 96-128, 14 F.C.C. Rcd. 7085 (rel. May 6, 1999). In particular, the pleadings in that proceeding raised the principle issues raised by the pleadings in this case: the reasonableness of inmate telephone rates and the feasability of different calling options, such as debit cards, 1-800 calls, or direct dial services. <u>See</u> Motions Hearing Tr. at 12:23-14:2; 15:17-16:5; 17:17-18:23. Moreover, the FCC invited comments from parties representing inmates and their families in that proceeding, and has received comments from them. <u>See</u> Defs.' Reply, Ex. 5 ("Comments of Citizens United For Rehabilitation of Errants and the Coalition of Families and Friends

---

[9] The FCC has exercised this authority in analogous, non-inmate contexts on several occasions. For example, the FCC determined that AT&T's practice of giving volume discounts to single customers who have large communications needs but not to a group of customers who might be able to pool their needs was prohibited. <u>See</u> Motions Hearing Tr. at 20: 2-15.

of Prisoners of the American Friends Service Committee ("CURE/AFSC"), CC Docket No. 96-128 (filed June 21, 1999)).[10]   The pendency of nearly identical claims before the FCC makes invocation of the primary jurisdiction in this case particularly suitable. See Total Tele. Comm. Serv. v. AT&T, 919 F.Supp. 472, 478-479 (D.D.C. 1996).

Finally, courts faced with similar challenges to inmate phone rates have already referred such challenges to the FCC under the doctrine of primary jurisdiction. See e.g., Arsberry v. Illinois, No. 99-CV-2457 (N.D. Ill. March 22, 2000)(court referred to FCC because of its experience in determining fairness of telephone rates), aff'd in part on other grounds, Arsberry v. Illinois, 244 F.3d 558 (7th Cir. 2001)(dismissing the equal protection claim under the doctrine of primary jurisdiction but reaching the merits on the other claims); Daleure v. Kentucky, 97-CV-709H (W.D. Ky. Feb. 10, 2000).

Accordingly, for all the foregoing reasons, the Court concludes that the FCC is clearly in the best position to resolve the core issues in this case, namely the reasonableness of the

---

[10] The Utility Consumers' Action Network ("UCAN") also filed comments in the FCC's proceeding and advised the FCC that it "recently undertook a detailed six month investigation into the billing practices of collect calls that originate from correctional facilities. UCAN seeks to share "its findings with the [FCC] and to educate the [FCC] staff as to paramount issues at stake in this proceeding." See Defs.' Reply, Ex. 7 ("Opening Comments of UCAN," CC Docket No. 96-128 (filed June 21, 1999)).

rates charged and the feasibility of alternative telephone arrangements in CCA facilities.[11]

**B. Uniformity**

Concern about inconsistent judgments further strengthens the case for application of the primary jurisdiction doctrine. Congress specifically delegated to the FCC the authority to regulate common carriers' rates, "classifications, practices, and charges," for interstate calls, including the rates and practices that apply to collect calls made by inmates. 47 U.S.C. § 203(a). As explained above, parties representing inmates are presently applying to the FCC for the same relief Plaintiffs seek in this action.  As such, there is a risk that this Court may render a ruling that undermines or is inconsistent with FCC determinations on the rates and terms of Defendants' arrangements.  There is also a risk that any decision would be inconsistent with the decisions of state courts and state regulatory bodies that are currently deciding these matters. See Defs.' Reply, Ex. 9 (October 26, 2000 Order dismissing class-action inmate challenge to phone rates on grounds of primary jurisdiction in Valdez v. State of New Mexico, No. D-0117-CV-2000-00104 (1st Judicial Dist. County of Rio Arriba)).

_____

[11] The Court observes that other non-CCA prison facilities have used different calling arrangements that provide for both lower rates and adequate security measures.  See e.g., Pls.' Opp'n., Ex. A ("Federal Bureau of Prison Memo")(charge for debit cards in Federal Bureau of Prisons is $.15 per minute).  The Court expects and anticipates that the FCC will examine this disparity in the course of its present proceeding.

Accordingly, the Court concludes that uniformity concerns counsel in favor of FCC referral.

### C.   Constitutional Issues

Plaintiffs seek to avoid application of the primary jurisdiction doctrine by arguing that their challenge raises constitutional issues that should be resolved by this Court. However, the presence of constitutional issues in an action poses no absolute bar to invoking primary jurisdiction.  See Allnet Communications Service, Inc., 965 F.2d at 1121 (concluding that even a constitutional issue may warrant an "initial take" by the Commission).

The constitutional issues are certainly no bar in this case. First, the FCC has considered constitutional issues in the telephone regulatory context in the past.  See Motions Hearing Tr. at 49:21-50:5.   Second, all of Plaintiffs' constitutional claims essentially revolve around the reasonableness of the rates charged. For example, Plaintiffs' equal protection claim is premised on the theory that Plaintiffs are charged a higher tariffed rate vis a vis other rate-payers -- both inside and outside similar prison facilities.   Their claim is therefore one of a discriminatory rate charge, and is exactly the type of claim that falls within the primary jurisdiction of the FCC and state regulators.  See e.g., Arsberry,  244 F.3d at 565.

Similarly, Plaintiffs' First Amendment and due process claims

are premised on the theory that the exclusive dealing contracts,
and in particular, the collect call-only long distance rates, are
so unreasonable that communications between inmates and their
family and counsel are unconstitutionally burdened.  The FCC's
"initial take" on the reasonableness of the current rates and on
other terms of the exclusive dealing contracts, while not
dispositive of the constitutional issues, would substantially
assist the Court in its task of adjudicating these claims.[12]  See
Allnet, 965 F.2d at 1121.

        Importantly, the primary jurisdictional referral would mean
only that the FCC will exercise its regulatory authority in the

---

        [12]  For example, in order to prevail on their First Amendment
claims, Plaintiffs must first demonstrate that the exclusive
dealings contracts entered into between Defendants result in rates
which are so exorbitant that reasonable access to the telephone is
denied.  See Johnson v. California, 207 F.3d 650, 656 (9th Cir.
2000)(rates not "so exorbitant" to deny plaintiff phone access);
Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986)(as
long as limitations on phone access are reasonable, there is no
First Amendment violation); Washington v. Reno, 35 F.3d 1093, 1100
(6th Cir. 1994)(inmate has no right to unlimited telephone use and
telephone access is subject to rational limitations in face of
security interests).

        If Plaintiffs were to make such a showing, this Court would
then have to evaluate whether the current arrangement resulting in
the burdening of phone access is reasonably related to a legitimate
penological interest.  See Turner v. Safley, 482 U.S. 78 (1987).
The FCC has considered and continues to consider factual issues
bearing on this question, such as the costs associated with serving
inmate facilities, the level of bad debt associated with inmate
payphone service providers, factors prohibiting the use of debit
cards, the burden on rate-payers, and the feasibility of other
billing options.

first instance.   After the FCC does so, to the extent that any constitutional claims remain, the Court will have the benefit of the agency's expert findings in addressing them.   <u>See e.g.</u>, <u>Far East Conference v. United States</u>, 342 U.S. 570, 574-575 (1952)(primary jurisdiction doctrine requires that in "cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over.  <u>This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined</u>.")(emphasis added).

Therefore, in view of the fact that the Court would benefit from the FCC's expertise; that concerns for uniformity counsel against decision at this time; and that the constitutional issues are no bar to FCC referral, the Court concludes that the FCC is the entity best suited to make the initial determination of the issues presented by Plaintiffs' claims.

On a final note, the Court observes that there are a number of cases now pending throughout the country involving similar challenges to phone rates that are alleged to be unconscionable and discriminatory.  These cases raise issues that are of great human concern to inmates, their family members and their counsel.  The hardships of prison life are only exacerbated by limiting the ability of prisoners and their families and lawyers to maintain person-to-person communications.  In referring this matter to the

14

FCC, the Court expects the agency to move with dispatch to conclude its ongoing proceedings so as to provide both courts and parties with meaningful analysis and guidance on these issues.

**IV. CONCLUSION**

For the reasons stated above, this case is **dismissed without prejudice** under the doctrine of primary jurisdiction.[13]   An Order will issue with this Opinion.

_Aug 22, 2001_
Date

_Gladys Kessler_
Gladys Kessler
United States District Judge

---

[13] The Court has the option under the doctrine of primary jurisdiction of either staying the case or dismissing it without prejudice.  The Court discerns no prejudice to the parties in dismissing, as opposed to staying, this case.