UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARTHA WRIGHT, <u>et al.</u>,          :
                                      :
          Plaintiffs,                 :
                                      :
               v.                     :     Civil Action
                                      :     No. 00-293 (GK)
CORRECTIONS CORPORATION OF            :
AMERICA, <u>et al.</u>,               :
                                      :                **FILED**
          Defendants.                 :
                                      :          OCT - 8 2003
_____       :
                                            NANCY MAYER WHITTINGTON, CLERK
                                               U.S. DISTRICT COURT

### MEMORANDUM OPINION

Plaintiffs in this action are inmates incarcerated at prison facilities operated by Corrections Corporation of America, Inc. ("CCA"), as well as family members, legal counsel, and other recipients of telephone calls from inmates at CCA facilities. Plaintiffs bring this putative class-action against Defendants, CCA and various telephone companies,[1] seeking to challenge the rates and terms arising from the long distance telephone service arrangements between telephone companies and prison facilities operated by CCA.

This matter is before the Court on Defendant Pioneer Telephone Cooperative's ("Pioneer") Renewed Motion to Dismiss Plaintiffs'

---

[1] CCA is a private for-profit corporation which operates eighty prisons and jails in twenty-six states pursuant to agreements with state and local governments, four of which house prisoners from the District of Columbia. Defendant telephone companies are Evercom Inc., American Telephone and Telegraph Company, MCI Worldcom Communications Inc., Pioneer Telephone Cooperative, and Global Telecommunications Link.



Complaint.  Upon consideration of the Motion, Opposition, Reply, and the entire record herein, for the reasons stated below, Pioneer's Motion to Dismiss is **granted.**

## I. BACKGROUND

Plaintiffs brought this action to challenge the "exclusive dealing contracts" between CCA facilities and Defendant telephone companies.  Under these contracts, each CCA facility grants to one telephone company the exclusive right to provide telephone services to that facility's inmates; in return, CCA receives a commission ranging from 25-50% of the revenues generated by the telephone companies from inmate calls.  The exclusive dealing contracts further provide that the only way inmates may communicate by telephone is through collect calls only--which Plaintiffs allege charges the highest operator assisted rate.  Inmates cannot receive calls from outside the facility, and neither inmates nor recipients of inmate calls are permitted to use other long-distance carriers or take advantage of less-expensive calling options for inmate-initiated calls.[2]

Plaintiffs allege that these exclusive dealing contracts have resulted in exorbitant and unconscionable long distance rates, which severely burden communication between inmates and their

---

[2]     For example, Plaintiffs allege that they are prohibited from using calling features such as direct-dial, dial around, and 1-800-COLLECT, all of which would result in rates considerably cheaper than the collect call-only rates mandated by the exclusive dealing contracts.  See Compl. at ¶¶ 9-15, ¶¶ 42-45, ¶¶ 51-72.

family members and counsel.   They also claim that the terms of these contracts are not set to further any security purpose or cover the costs involved in providing phone service to inmates, but rather are primarily designed to enrich Defendants (through the inflated rates and high commission fees) at the expense of the recipients of inmate calls.  Plaintiffs seek monetary damages and an injunction against the exclusive dealing contracts, alleging that they violate the First Amendment, Fourteenth Amendment, Sherman Anti-Trust Act, 15 U.S.C. § 1 et seq., Communications Act, 47 U.S.C. § 151 et seq., and District of Columbia law.

In May 2000, Pioneer moved to dismiss the Complaint as to it, in part, on jurisdictional grounds.  On August 22, 2001, the Court granted the Motions to Dismiss of Pioneer and other Defendants, finding that primary jurisdiction of the matter rested with the Federal Communications Commission ("FCC").  The Court dismissed the case without prejudice and directed the parties to file appropriate pleadings before the FCC regarding the issues in this case. However, on November 5, 2001, the Court granted Plaintiffs' Motion to Reconsider and ordered that this action be stayed, instead of dismissed, pending the proceedings before the FCC.  While the proceedings before the FCC continue, Pioneer now moves to renew its

3

Motion to Dismiss the Complaint as to it for lack of personal jurisdiction.[3]

## II.   STANDARD OF REVIEW

Rule 12(b)(2) states that a claim against a defendant may be dismissed for lack of personal jurisdiction.   Fed R. Civ. P. 12(b)(2).   Personal jurisdiction is an essential element of the jurisdiction of district courts, without which the Court is powerless to adjudicate. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999).   In the District of Columbia ("the District" or "D.C."), a court may establish personal jurisdiction over a non-resident defendant in two ways: 1) through a specific jurisdictional provision under the D.C. long-arm statute, D.C. Code § 13-423(a), for claims arising from a non-resident defendant's actions in the District, or 2) through the District's general jurisdiction statute, D.C. Code § 13-334(a), if the corporation is doing business in the District and the claims arise from the defendant's conduct outside the District.   Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 509 (D.C. Cir. 2002)  (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 & n. 15 (1985), and

---

[3]      Pioneer also argues that dismissal is appropriate under Rule 12(b)(7) because "Plaintiffs have failed to join the Watonga Economic Development Authority, an indispensable party."   Def.'s Motion at 3.   However, as the Court is granting this Motion on jurisdictional grounds, there is no need to examine whether dismissal is appropriate under Pioneer's indispensable party claim.

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 n. 9(1984), respectively).

The plaintiff has the burden of demonstrating the factual bases for personal jurisdiction, and must allege specific facts that connect the defendant with the forum state without relying on bare allegations or conclusory statements. First Chicago Int'l v. United Exchange Co., 836 F.2d 1375, 1378 (D.C. Cir. 1988). Accordingly, courts should resolve factual discrepancies in favor of the plaintiff. Crane v. N.Y. Zoological Society, 894 F.2d 454, 456 (D.C. Cir. 1990). However, courts need not treat all of the plaintiff's allegations as true, and courts may instead "receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." United States v. Philip Morris, Inc., 116 F.Supp.2d 116, 120 n. 4 (D.D.C. 2000).

## III.  ANALYSIS

Pioneer claims that Plaintiffs have failed to plead sufficient facts to support a finding of personal jurisdiction.  In opposition, Plaintiffs argue that Pioneer is subject to the personal jurisdiction of this Court under the D.C. long-arm statute because Pioneer had significant business transactions in the District and caused tortious injury by its acts or omissions in the District.  Plaintiffs also argue that even if personal jurisdiction is not established under the District's long-arm statute, Pioneer

has received substantial revenue from the District sufficient to establish general jurisdiction.[4]

**A. Personal Jurisdiction over Defendant Pioneer Has Not Been Established under the District of Columbia Long-Arm Statute.**

In determining whether it has specific personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: first, it must determine whether the applicable long-arm statute authorizes jurisdiction, and if so, it must then decide whether the exercise of jurisdiction is constitutionally permissible. Burger King Corp., 471 U.S. at 471-76; Steinberg v. Int'l Criminal Police Org., 672 F.2d 927, 930 (D.C. Cir. 1981). In this case, Plaintiffs argue that personal jurisdiction over Pioneer can be established under the long-arm jurisdiction provision of the D.C. Code. See D.C. Code § 13-423(a).[5] However, Plaintiffs have not shown that

---

[4]     Plaintiffs also argue that they can establish peronal jurisdiction over Pioneer under the Sherman Antitrust Act, 15 U.S.C. § 1, et seq. However, Plaintiffs themselves note that our Court of Appeals has held that "for personal jurisdiction to lie [under the Sherman Antitrust Act], the defendant must be an inhabitant of, found in, or transacted business in the District." Pls.' Sept. 2000 Opp'n at 12 (citing G.T.E. New Media Services, Inc. v. Bellsouth Corporation, 199 F.3d 1343, 1351 (D.C. Cir. 2000)). In this case, Pioneer is an Oklahoma corporation that is neither an inhabitant of nor found in the District, and the Court concludes that Pioneer has not transacted business in D.C., see discussion at § III.A.2., infra. Thus, personal jurisdiction over Pioneer cannot be established under the Sherman Antitrust Act.

[5]     D.C. Code § 13-423(a) provides, in pertinent part:

A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the

6

Pioneer's conduct has caused a tortious injury in the District or that Pioneer transacted business in the District of Columbia sufficient to satisfy both the long-arm statute and constitutional due process concerns.

>    **1.    Plaintiffs have failed to establish that Pioneer has caused a tortious injury in the District of Columbia.**

Plaintiffs contend that Pioneer has caused a tortious injury in the District.  Although Plaintiffs have not specified whether such injury was caused by Pioneer's act or omission in D.C., <u>see</u> § 13-423(a)(3), or by an act or omission outside D.C. that is accompanied by Pioneer's regular business activities in D.C., <u>see</u> § 13-423(a)(4), the distinction is irrelevant because Plaintiffs' Complaint fails to show that any conduct by Pioneer caused tortious injury in the District.

---

person's--
>    (1) transacting any business in the District of Columbia...;
>    (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>    (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
>    (5) having an interest in, using, or possessing real property in the District of Columbia....

First, none of the named prisoner Plaintiffs are presently, or were ever, incarcerated at CCA's Diamondback Correctional Facility in Watonga, Oklahoma ("Diamondback"). <u>See</u> Compl. ¶ 27 (stating that prisoner Plaintiffs "are presently, or have been at relevant times" incarcerated at CCA facilities in Ohio, Arizona, and New Mexico). Diamondback is the only CCA facility to which Pioneer ever provided inmate calling services. <u>See</u> Ex. 3 (Second Declaration of Jim Eaton, Assistant Manager of Pioneer) at ¶ 2, attached to Def.'s May 2000 Mot. ("Eaton Decl.").[6] Thus, Plaintiffs have failed to allege that Pioneer caused a tortious injury when a named prisoner Plaintiff placed calls to the District using Pioneer's inmate calling system at Diamondback.

Second, none of the named Plaintiffs who received inmate calls using Pioneer's inmate calling services at the Diamondback are residents of the District of Columbia. <u>See</u> Compl. at ¶ 20 (Clara Clark is a resident of Evansville, Indiana), ¶ 21 (Shonte Sargent is a resident of Indianapolis, Indiana), ¶ 22 (Rosemary Croom is a resident of Indianapolis, Indiana), and ¶ 23 (John Brown is a resident of Columbus, Indiana). Thus, Plaintiffs have failed to establish that Pioneer caused a tortious injury in the District when non-inmate named Plaintiffs received calls from Pioneer's inmate calling system at Diamondback.

---

[6]   As Pioneer's Motion seeks to <u>renew</u> its previous Motion to Dismiss, the present briefs reference papers filed in 2000 regarding the original Motion to Dismiss.

Plaintiffs argue that personal jurisdiction over Pioneer for allegedly causing tortious injury is established because Pioneer's "revenue extracted from District resident[s] is substantial." Pls.' Sept. 2000 Opp'n at 11. However, this argument fails because in analyzing whether a company has gained substantial revenue in the District, courts have considered both the absolute revenue amount and percentage of gross revenue derived from a defendant's business in D.C.  See Founding Church of Scientology v. Verlag, 536 F.2d 429, 433 (D.C. Cir. 1976) (finding revenue in excess of $26,000 for a ten-month period and constituting approximately 1% of the company's total gross revenue to be "substantial").

In this case, neither the $7.25 in absolute revenue nor the 0.00049% of gross revenue that Pioneer received from prisoner collect calls to the District are sufficient to allege that Pioneer "derives substantial revenue" in the District.    D.C. Code § 13-423(a)(4); see also Delahanty v. Hinckley, 686 F. Supp. 920, 925 (D.C. 1986)(defining substantial revenue as "enough revenue to indicate a commercial impact in the forum" and finding that $3,000 from the sale of 600 firearms was substantial revenue); Gatewood v. Fiat, 617 F.2d 820 (D.C. Cir. 1979)(defining $3 million of automobile sales to D.C. residents, or 1.5% of corporation's total national revenue, as substantial revenue).

Overall, Plaintiffs offer no facts in their Complaint to support their allegation that Pioneer's provision of inmate calling

9

services at the Diamondback Correctional Facility in Watonga, Oklahoma, has caused a specific tortious injury in the District.[7] Nor have Plaintiffs established that Pioneer derives substantial revenue from its business activities in the District. Accordingly, the Court concludes that Plaintiffs have failed to establish personal jurisdiction over Pioneer pursuant to the tortious injury provisions of the District's long-arm statute.

### 2. Plaintiffs have failed to establish that Pioneer has transacted business in the District of Columbia.

Under the D.C. long-arm statute, a court may also exercise jurisdiction over a defendant based on a claim for relief arising from "transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1). For this "transacting any business" section of the long-arm statute to apply, the defendant's contacts with the District must relate to the factual circumstances giving rise to the suit. Koteen v. Bermuda Cablevision, Ltd., 913 F.2d 973, 974-75 (D.C. Cir. 1990). In addition, courts have concluded that the scope of this provision "covers any transaction of business in the District of Columbia that can be reached jurisdictionally

---

[7]     While Plaintiffs may allege that they will be able to establish personal jurisdiction pursuant the tortious injury provisions of the D.C. long-arm statute once class members are added to this action, the Plaintiff class has not been certified and Plaintiffs have not filed any Fed. R. Civ. P. 23 motion. Because Plaintiffs bear the burden of providing specific claims, and not bare allegations, to support the exercise of jurisdiction, First Chicago Int'l, 836 F.2d at 1378, personal jurisdiction over Pioneer cannot be established on these speculative grounds.

without offending the due process clause." <u>Mouzavires v. Baxter</u>,
434 A.2d 988, 993 (D.C. 1981); <u>see</u> <u>also</u> <u>Crane v. Carr</u>, 814 F.2d
758, 762 (D.C. Cir. 1987). Thus, to determine whether the exercise
of personal jurisdiction over Pioneer satisfies the "traditional
notions of fair play and substantial justice" identified in
<u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)
(internal quotation marks omitted), the Court must determine
whether Pioneer has "minimum contacts" with D.C. by which it could
"reasonably anticipate being haled into court there." <u>World-Wide
Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).

In determining whether Pioneer has minimum contacts with the
District necessary to satisfy the requirements of both the long-arm
statute and the due process clause, the Court must determine
whether Pioneer has "purposefully directed [its] activities at
residents of the forum, and the litigation results from alleged
injuries that arise out of or relate to those activities." <u>Burger
King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472-73 (1985) (internal
quotation marks omitted). Under this rubric, courts have generally
found that to establish jurisdiction under the transacting business
provision of the D.C. long-arm statute, a defendant must enter into
contracts within the District, <u>Mouzavires</u>, 434 A.2d at 996-97,
perform various business acts in the District, <u>Clements
Distributing Co. of Virginia, Inc. v. Celebrity Products, Inc.</u>, 699
F.Supp. 322, 322-23 (D.D.C. 1988), or actively solicit business

11

within the District, Schwartz v. CDI Japan, Ltd., 938 F.Supp. 1, 6 (D.D.C. 1996).

In this case, Plaintiffs have failed to demonstrate any of these activities.  Instead, Plaintiffs make the general allegation that Pioneer is "in the business of providing telephone services to persons in the District of Columbia."  Compl. ¶ 30.  However, Plaintiffs offer no specific facts in their complaint that support a prima facie showing that Pioneer has minimum contacts with the District of Columbia.

Pioneer exhibits none of the fundamental indicators of a company with activities in the District of Columbia--it is not registered to transact business in the District, Eaton Decl. at ¶ 5; it has no service tariffs on file with the District's Public Service Commission, id. at ¶ 9; and it does not maintain an office, personnel, or real estate in the District, id. at ¶ 4.  Furthermore, Pioneer does not provide telecommunications services to any callers located in the District, id. at ¶ 9, and the contract that established Pioneer as the provider of inmate phone calls at Diamondback was not signed in the District, id. ¶ 14.

Plaintiffs further allege that establishing jurisdiction over Pioneer is constitutionally proper because it transacted business in the District by receiving revenues from D.C. residents. However, the small amount of both the absolute revenue ($7.25) and the percentage revenue (0.00049%) Pioneer has generated in the

12

District makes it foolish to conclude that Pioneer has "projected its corporate presence into the District of Columbia." First American Bank, N.A. v. United Equity Corp. 89 F.R.D. 81, 86 (D.C. 1981) (supporting jurisdiction when defendant defaulted on a $140,000 loan that was partially contracted in the District).

In short, there is no evidence that Pioneer purposefully targeted its activities at residents of the District of Columbia in such a way as to satisfy the minimum contacts due process requirement for asserting personal jurisdiction. Pioneer has received $7.25 for phone calls placed by inmates in Oklahoma to residents of the District. Allowing this Court to exercise personal jurisdiction over Pioneer based on a few collect phone calls placed by prisoners in Oklahoma to the District neither establishes that Pioneer has transacted business here nor satisfies the due process requirement that Pioneer have minimum contacts with the District. See World-Wide Volkswagen Corp, 444 U.S. at 298 (emphasizing that "the mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the [due process] requirement of contact with the forum State") (internal quotations omitted). Accordingly, Plaintiffs have failed to establish personal jurisdiction over Pioneer under the transacting business provision of the District's long-arm statute.

13

**B.  General Jurisdiction over Defendant Pioneer Has Not Been Established under District of Columbia Law.**

Plaintiffs also argue that Pioneer is subject to the general jurisdiction of this Court because it is "doing business" in the District.   See D.C. Code § 13-334(a).[8]   A court may exercise general personal jurisdiction over a non-resident defendant "only [] if the defendant's business contacts with the forum district are 'continuous and systematic.'"   Gorman, 293 F.3d at 509-10 (quoting Helicopteros, 466 U.S. at 415).   Under D.C. law, the limits of jurisdiction under the "doing business" provision of the District's general jurisdiction statute have been held to be coextensive with the reach of constitutional due process.   Gorman, 293 F.3d at 510 (citing  Hughes v. A.H. Robins Co., Inc., 490 A.2d 1140, 1148 (D.C. 1985)).

---

[8]     D.C. Code § 13-334(a) provides:

In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, where he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

Although § 13-334(a) appears only to specify proper methods of service, the District of Columbia Court of Appeals has held that compliance with the statute also gives rise to personal jurisdiction over a foreign corporation doing business in the District. AMAF Intern. Corp. v. Ralston Purina Co., 428 A.2d 849, 850 (D.C. 1981); see also El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 673 n. 7 (D.C. Cir. 1996).

Pioneer argues that Plaintiffs cannot establish general jurisdiction over it because it provides products and services only to residents and businesses in 45 Oklahoma counties and "does not conduct business in the District of Columbia." Eaton Decl. at ¶¶ 2-3.   In opposition, Plaintiffs allege that they can establish general jurisdiction through Pioneer's "continuous and systematic contact with the [District] since at least 1996 when it received revenues from its [Rural Telephone Bank] stock and...since August 1999 when it began the collection of revenue from District residents [for collect phone calls]." Pls.' Sept. 2000 Opp'n at 12.   However, neither of these activities can establish general jurisdiction over Pioneer in the District.

First, the Court has already determined that the collection of $7.25 in collect call revenues is insufficient to satisfy the due process requirements for asserting personal jurisdiction over Pioneer.   See discussion at § III.A.2, supra.   Second, even if Pioneer is still receiving revenue from the stock it holds in the Rural Telephone Bank, those revenues cannot be used as the basis of jurisdiction.   Pioneer was required to buy Rural Telephone Bank stock in order to obtain a loan from the Department of Agriculture and "[t]he government contacts principle establishes that entry into the District by nonresidents for the purpose of contacting federal governmental agencies cannot serve as a basis for personal jurisdiction." Freiman v. Lazur, 925 F.Supp. 14, 24 (D.D.C. 1996)

15

(citing <u>Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.</u>, 355 A.2d 808 (D.C. 1976)).

In sum, Plaintiffs have failed to prove that Pioneer has carried out "a consistent pattern of regular business activity within the jurisdiction," <u>Trerotola v. Cotter</u>, 601 A.2d 60, 63 (D.C. 1991), or that Pioneer's activities in the District represent a "continuing corporate presence in the forum...directed at advancing the corporation's objective," <u>El-Fadl v. Central Bank of Jordan</u>, 75 F.3d 668, 675 (D.C. Cir. 1996) (internal quotations omitted), as required under § 13-344.  Accordingly, the Court concludes that Plaintiffs have not established general jurisdiction over Pioneer.

**III.   CONCLUSION**

Plaintiffs have failed to establish personal jurisdiction over Defendant Pioneer under either the District of Columbia's long-arm or general jurisdiction statutes.  Accordingly, the Defendant's Renewed Motion to Dismiss for lack of personal jurisdiction is **granted.**  An appropriate Order will issue with this Opinion.

_Oct 7, 2003_
Date

_Gladys Kessler_
Gladys Kessler
United States District Judge

16

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARTHA WRIGHT, et al.,              :
                                    :
          Plaintiffs,               :
                                    :
               v.                   :        Civil Action
                                    :        No. 00-293 (GK)
CORRECTIONS CORPORATION OF          :
AMERICA, et al.,                    :        **FILED**
                                    :
          Defendants.               :        OCT - 8 2003
_____:
                                             NANCY MAYER WHITTINGTON, CLERK
                                             U.S. DISTRICT COURT

## ORDER

Plaintiffs in this action are inmates incarcerated at prison facilities operated by Corrections Corporation of America, Inc. ("CCA"), as well as family members, legal counsel, and other recipients of telephone calls from inmates at CCA facilities. Plaintiffs bring this putative class-action against Defendants, CCA and various telephone companies, seeking to challenge the rates and terms arising from the long distance telephone service arrangements between telephone companies and prison facilities operated by CCA.

This matter is before the Court on Defendant Pioneer Telephone Cooperative's ("Pioneer") Renewed Motion to Dismiss Plaintiffs' Complaint. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, for the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Pioneer's Renewed Motion to Dismiss [**#121**] is **granted**; and it is further



**ORDERED** that Plaintiffs shall file a Status Report to the

Court regarding the proceedings before the FCC by November 1, 2004.

Oct 7, 2003
_____
Date

Gladys Kessler
_____
Gladys Kessler
United States District Judge

Copies to:

David Cosson
Kraskin, Lesse & Cosson, LLP
2120 L Street, N.W., Suite 520
Washington, D.C.  20037

Harold Logsdon
General Counsel
Pioneer Telephone Cooperative
Post Office Box 539
Kingfisher, Oklahoma  73750

Vaughn W. Royal
Chevy Chase Pavilion, Suite 960
5335 Wisconsin Avenue, N.W.
Washington, D.C.  20015

James Bradtke
Soule & Bradtke
155 North Michigan Avenue
Suite 500
Chicago, Illinois  60601

Tracy Bridgham
Market  Disputes  Resolution
Division
Enforcement Bureau - FCC
445 12th Street, S.W.
Washington, D.C.  20554

Michael L. Burak
Linda Bray Chanow
Jonathan J. Frankel
Wilmer, Cutler & Pickering
2445 M Street, N.W.
Washington, D.C.  20037-1420

Adam M. Charnes
MCI Communications Corporation
Office of the General Counsel
1133 - 19th Street, N.W.
Washington, D.C.  20036

Michael E. Deutsch
People's Law Office
1180 North Milwaukee Avenue
Chicago, Illinois  60622

Anthony C. Epstein
Maury D. Shenk
Steptoe & Johnson, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036

Mark D. Hopson
Sidley, Austin, Brown & Wood
1501 K Street, N.W.
Washington, D.C.  20005

Lois J. Lipton
AT&T Law and Government Affairs
222 West Monroe Street
Chicago, Illinois  60606

Susan A. Littell
Dickstein, Shapiro, Morin &
Oshinsky, LLP
2101 L Street, N.W.
Washington, D.C.  20037-1526

2

Barbara J. Olshansky
Center    for    Constitutional
Rights
666 Broadway, Seventh Floor
New York, New York  10022

Debra Ann Palmer
Steven John Roman
Schiff, Hardin & Waite
1101 Connecticut Avenue, N.W.
Washington, D.C.  20036

Charles H.R. Peters
Schiff, Hardin & Waite
6600 Sears Tower
Chicago, Illinois  60606

Stephen Seliger
Seliger, Elkin & Dolan, Ltd.
155 North Michigan Avenue
Suite 500
Chicago, Illinois  60601

Marie-Ann Sennett
D.C. Prisoners' Legal Services
Project
1400 - 20th Street, N.W.
Suite 117
Washington, D.C.  20036

Daniel P. Struck
Jones, Skelton & Hochull
2901 North Central
Suite 800
Phoenix, Arizona  85012

Brian J. Telpner
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036

Anthony J. Trenga
Miller & Chevalier, Chartered
655 - 15th Street, N.W.
Suite 900
Washington, D.C.  20005-5701

Jay M. Vogelson
Stutzman & Bromberg, P.C.
2323 Bryan Street, Suite 2200
Dallas, Texas  75201

Frank R. Volpe
Sidley, Austin, Brown & Wood
1501 K Street, N.W.
Washington, D.C.  20005