## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARTHA WRIGHT, *et al*., | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 00-293 (GK) |
| | ) |
| v. | ) |
| | ) Judge:  Gladys Kessler |
| CORRECTIONS CORPORATION OF | ) |
| AMERICA, *et al*., | ) |
| | ) |
| Defendants. | ) |
| | ) |

### MOTION TO REOPEN AND LIFT STAY TEMPORARILY

The Plaintiffs respectfully move this Court to reopen the present case and to temporarily lift the stay.  When the stay is lifted, the Plaintiffs will seek to: (1) file an amended complaint; (2) take preservation depositions according to Rule 32 of the Federal Rules of Civil Procedure; and (3) add counsel.

### I.  BACKGROUND

The Plaintiffs are inmates, their family members, and their legal counsel who filed a class action lawsuit, in 2000, challenging excessive and unreasonable charges for inmate calling services.  The Plaintiffs sued the Corrections Corporation of America ("CCA"), the nation's largest private operator of correctional facilities, and several providers of inmate calling services, including Global Tel*Link Corporation ("GTL"), Evercom, Inc., AT&T, MCI-Worldcom, and Pioneer Telephone Cooperative ("Pioneer") (collectively, "the Defendants").  In their original complaint, the Plaintiffs alleged that the Defendants' actions violated their right to free speech under the First Amendment to the U.S. Constitution; their right to due process of law under the Fifth and Fourteenth Amendments to the U.S. Constitution; the Contract Clause of the U.S.

Constitution; the Sherman Antitrust Act, 15 U.S.C. § 1 *et. seq.*; the Federal Communications Act ("FCA"), 47 U.S.C. § 151 *et. seq.*; and the laws of the District of Columbia.

In 2001, the Defendants moved to dismiss the Plaintiffs' complaint on the ground that the Federal Communication Commission ("FCC") had primary jurisdiction over their claims. In response, the Court "conclude[d] that the FCC is clearly in the best position to resolve the core issues in this case, namely the reasonableness of the rates charged and the feasibility of alternative telephone arrangements in CCA facilities." (Docket Entry No. 94 at 10–11). The Court subsequently entered an order staying the case. (Docket Entry No. 105). Additionally, while the case was stayed, the Court dismissed Defendants Pioneer and GTL on the ground that they did not fall within the Court's personal jurisdiction; no other Defendants have been dismissed. (The case was administratively closed sometime after the dismissal of GTL.) Shortly after this suit was referred to the FCC, the parties met with FCC staff to discuss the appropriate means by which the Plaintiffs' allegations might be raised before the FCC. After protracted discussions, it was determined that the Plaintiffs should address policy matters, including determinations of whether rates were unjust and unreasonable, through the rulemaking process. Accordingly, on November 3, 2003, several of the Plaintiffs, along with others, ("Petitioners") filed a Petition for Rulemaking or, in the Alternative, Petition to Address Referral Issues in Pending Rulemaking ("First Wright Petition"). In the First Wright Petition, the Petitioners sought to initiate rulemaking to address the high cost of inmate calling services.[1] On December 31, 2003, the FCC released a public notice requesting that interested parties submit comments on the First Wright Petition. The Petitioners filed an alternative petition for rulemaking in 2007

---

[1] Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996, Petition of Martha Wright *et al.* for Rulemaking or, in the Alternative, Petition to Address Referral Issues in Pending Rulemaking, CC Docket No. 96-128 at 3 (filed Nov. 3, 2003).

("Alternative Wright Petition"), seeking to require a debit-calling option in correctional facilities, prohibit per-call charges, and establish rate caps for interstate, interexchange calls.[2]  In 2012, the FCC again issued a notice of proposed rulemaking seeking comment on inmate calling services and on the First Wright Petition and Alternative Wright Petition.[3]

On September 26, 2013, the FCC issued its Report and Order and Further Notice of Proposed Rulemaking ("Inmate Rate Order").[4]  The Inmate Rate Order set strict limits on rates for interstate inmate calling services,[5] concluding that the "[e]vidence in our record demonstrates that inmate phone rates today vary widely, and in far too many cases *greatly exceed the reasonable costs of providing the service.*"[6]  The FCC noted that inmates and those receiving their calls were required to pay as much as $17.30 for a 15-minute interstate collect call.[7]  In adopting limits on interstate inmate calling charges, the FCC based its authority, in part, on the

---

[2] Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996, Petitioners' Alternative Rulemaking Proposal, CC Docket No. 96-128 (filed Mar. 1, 2007).

[3] Notice of Proposed Rulemaking, 27 FCC Rcd 16629, Rates for Interstate Inmate Calling Services, WC Docket No. 12-375 (2012).

[4] Inmate Rate Order and Further Notice of Proposed Rulemaking, 78 Fed. Reg. 6795, FCC 13-113, Rates for Interstate Inmate Calling Services, WC Docket No. 12-375, (2013).

[5] The Inmate Rate Order created an interim hard rate cap based on "(1) the highest total-company costs presented in a cost study provided by Pay Tel, an ICS provider that exclusively serves jails, and (2) the highest collect calling cost data presented in the 2008 ICS Provider Date Submission, compiling data from seven different ICS providers that serve various types and sizes of correctional facilities."  Inmate Rate Order at 5.  The report also established "safe-harbor" rates "at or below which rates will be treated as lawful (i.e., just, reasonable, and fair) unless and until the Commission issues a finding to the contrary)."  *Id*. at 5.  Specifically, the FCC adopted interim safe-harbor rates of $0.12 per minute for debit and prepaid interstate calls and $0.14 per minute for collect interstate calls and interim hard-cap rates of $0.21 per minute for interstate debit and prepaid calls, and $0.25 per minute for collect interstate calls.  *Id*. at 5.

[6] Inmate Rate Order at 3 (emphasis added).

[7] Inmate Rate Order at 20.

FCA's requirements that interstate rates be "just and reasonable"[8] and "benefit . . . the general public.[9]"  The Inmate Rate Order explained that limiting rates for interstate inmate calling services would benefit society by reducing recidivism and by "help[ing] families and the estimated 2.7 million children of incarcerated parents in our nation, an especially vulnerable part of our society."[10]  The FCC Commissioners gave special recognition to Martha Wright, the lead plaintiff in this suit and lead petitioner before the FCC, noting that "[t]his all began with one Washington, D.C. grandmother, Mrs. Martha Wright, who spoke truth to power in 2003, and reminded us that one voice can still spur a movement and drive meaningful change."[11]

Since the FCC issued the Inmate Rate Order, the FCC has continued the process of issuing rulemaking for *intrastate* inmate calling services.  The Inmate Rate Order adopted a further notice of proposed rulemaking addressing, among other things, reforms to intrastate inmate calling services.[12]  In late September, Commissioners Wheeler and Clyburn circulated to the FCC a draft proposal on regulations limiting intrastate charges.[13]  Commissioner Clyburn's office has stated that the public comment period on the proposed intrastate regulations could conclude by as early as the end of this year. On October 22, 2014, the FCC issued a second

---

[8] Inmate Rate Order at 6 (quoting 47 U.S.C. §§ 151, 201(b)).

[9] Inmate Rate Order at 6 (quoting 47 U.S.C. § 276(b)(1)).

[10] Inmate Rate Order at 3.

[11] Inmate Rate Order at 107 (statement of Acting Chairwoman Mignon Clyburn).

[12] Inmate Rate Order at 67–72.

[13] Nancy Scola, *Federal Regulators Float and Aggressive Plan to Cut the Cost of Prison Calls*, Wash. Post, Sept. 25, 2014, *available at* http://www.washingtonpost.com/blogs/the-switch/wp/2014/09/25/federal-regulators-float-an-aggressive-new-plan-to-cut-the-cost-of-prison-calls/.

notice of proposed rule-making seeking further comments on inmate calling services, including with respect to intrastate rates.[14]

GTL, Securus Technologies, Inc. ("Securus"), a defendant in this suit under its former name Evercom, and others have filed petitions for review of the FCC's Inmate Rate Order.[15] Briefing in the United States Court of Appeals for the District of Columbia Circuit is scheduled to conclude on December 14, 2014.

Over the past several months and since the Inmate Rate Order was adopted, prisoners and their relatives and friends have filed several other putative class action lawsuits challenging excessive and unreasonable charges for inmate calling services. *See James v. Global Tel\*Link Corp.*, 2:13-cv-4989 (D. N.J. filed Aug. 20, 2013); *Chruby v. Global Tel\*Link Corp.*, 1:14-cv-456 (E.D. Va. filed Apr. 24, 2014); *Mojica v. Securus Tech., Inc.*, 5:14-cv-5258 (W.D. Ark. filed Aug. 14, 2014); *Murilla v. Global Tel\*Link, Corp.*, 14-cv-3275 (D. Minn. filed Aug. 27, 2014).

The Plaintiffs intend to pursue their long stayed claims for damages in this or another court of competent jurisdiction armed with the necessary determinations from the FCC regarding the reasonableness of the charged rates. The Plaintiffs acknowledge that, regretfully, FCC proceedings relevant to the Plaintiffs' claims are ongoing. Pursuant to Local Rule 7(m), counsel for plaintiffs has contacted counsel for the remaining defendants to seek to confer and determine whether defendants would consent to this motion to reopen, but none have so consented.

## II. REASONS FOR REOPENING THE CASE AND TEMPORARILY LIFTING THE STAY

---

[14] Second Further Notice of Proposed Rulemaking, WC Docket No. 12-375 (FCC 14-158, released October 22, 2014).

[15] *Securus Tech., Inc. v. FCC*, 13-1280 (D.C. Cir. filed Nov. 14, 2013).

The Plaintiffs request that the Court reopen this case and lift the stay on a temporary basis so that the Plaintiffs may file an amended complaint, take preservation depositions, and addDeb counsel.

### A. Filing an Amended Complaint

The Plaintiffs seek to amend their complaint in order to preserve their rights and to revise their allegations and claims in light of new factual and legal developments.  These amendments are both necessary and timely.

First, in the thirteen years since this case was stayed, the status of several of the Defendants has changed.  As noted above, GTL was dismissed from this suit for want of personal jurisdiction.  Since its dismissal, however, GTL has contracted with the District of Columbia Department of Corrections to provide inmate telephone services at the Correctional Treatment Facility located in Washington, D.C.  GTL has also relocated its corporate headquarters from Mobile, Alabama to Reston, Virginia, which is located less than 20 miles from the District of Columbia.  Given these facts, it appears that this Court now possesses personal jurisdiction over GTL.  As such, the Plaintiffs seek to amend their complaint to reassert claims against GTL for imposing excessive and unreasonable charges for prison calling services.  Additionally, after its acquisition by a private equity firm in 2004, Defendant Evercom was renamed Securus Technologies, Inc.  The Plaintiffs seek to amend their complaint to name Securus as a defendant.

Second, the status of several of the putative class representatives in the present case has changed as well.  Given the amount of time that has passed since this case was filed, and the changes that have occurred in the Plaintiffs' lives during that time, the Plaintiffs may seek to add new class representatives or to remove class representatives who have died or are unwilling or unable to actively participate in this case.

Third, the Plaintiffs may seek to modify their allegations and claims against the existing Defendants to account for new factual and legal developments.  For instance, the FCC's recent Inmate Rate Order provides additional background and support for the Plaintiffs' claim that the Defendants have violated the FCA by levying unreasonable and excessive charges for inmate calling services.  Moreover, the Plaintiffs may seek to expand the scope of their proposed class to include individuals who have paid for inmate calling services in order to communicate with inmates located in correctional facilities that are not operated by Defendant CCA.

It is important that this Court move expeditiously to reopen the present case and to lift the stay so that the Plaintiffs may amend their complaint as soon as is practicable.  The Plaintiffs' proposed claims against GTL and on behalf of individuals paying for inmate calling services for inmates who are located in non-CCA facilities, may be subject to limitations.  Additionally, because multiple class action lawsuits involving inmate calling services have now been filed in several jurisdictions around the country, it is likely that these suits will be referred, under 28 U.S.C. § 1407, to the Judicial Panel on Multidistrict Litigation.  As the initial plaintiffs bringing such claims and as the petitioners in the relevant FCC proceeding, Plaintiffs have a legitimate interest in participating in this process and presenting their views.

### B.  Taking Preservation Depositions

The Plaintiffs also seek to reopen the case and lift the stay so that they may take preservation depositions under Rule 32 of the Federal Rules of Civil Procedure.  Since this case was filed in 2000, some of the proposed class representatives have reached advanced ages, including lead class representative Martha Wright, who is currently 89 years old.  As recognized by the FCC, Mrs. Wright and several of the other Plaintiffs have played an essential role in promoting inmate calling service reforms to the benefit of millions of inmates and their loved ones.  It is crucial that counsel for the Plaintiffs be permitted to take preservation depositions for

class representatives like Mrs. Wright who may be prevented by age or infirmity from testifying in the event that this case proceeds to trial.

### C.  Substituting Counsel

Lastly, the Plaintiffs seek to reopen the case and lift the stay so that new counsel may appear on their behalf.  Although the Plaintiffs' counsel, the Washington Lawyers' Committee for Civil Rights ("Washington Lawyers' Committee") will continue to represent them, the Washington Lawyers' Committee will seek to bring in new co-counsel to assist in this complex lawsuit.

### III.  CONCLUSION

For the reasons stated above, the Plaintiffs respectfully move this Court to reopen the present case and to lift the stay on a temporary basis.

October 27, 2014                                  Respectfully submitted,


                                                  /s/ Deborah Golden
                                                  Deborah Golden (Bar No. 470578)
                                                  Elliot Mincberg (Bar No. 941575)
                                                  Matthew K. Handley (Bar No. 489946)
                                                  Washington Lawyers Committee for Civil Rights
                                                  and Urban Affairs
                                                  11 Dupont Circle, N.W., Suite 400
                                                  Washington, D.C. 20036
                                                  Telephone: (202) 319-1000
                                                  Facsimile: (202) 319-1010
                                                  deborah_golden@washlaw.org

                                                  *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2014, I electronically filed the foregoing with the

Clerk of the Court using the ECF, who in turn sent notice to all counsel of record who are

registered with the Court's ECF system

/s/ *Deborah Golden*
Deborah Golden