# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MARTHA WRIGHT, *et al*.,

     Plaintiffs,

   v.

CORRECTIONS CORPORATION OF
AMERICA, *et al*.,

     Defendants.

Case No: 1:00-cv-00293 (GK)

# SECURUS TECHNOLOGIES, INC.
# RESPONSE TO PLAINTIFFS' MOTION
# TO REOPEN AND LIFT STAY TEMPORARILY

Stephanie A. Joyce (D.C. Bar 464778)
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006
Telephone: 202.857.6081
Facsimile: 202.857.6395
Email: Stephanie.Joyce@arentfox.com

*Counsel to Securus Technologies, Inc.*

Dated: November 24, 2014

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................1

    A.    Petition for Rulemaking (October 31, 2003) – "[P]etitioners request that the Commission prohibit exclusive inmate calling service agreements"................2

    B.    Alternative Rulemaking Proposal (February 28, 2007) – "[E]stablish benchmark rates for long distance prison inmate calling services"......................2

    C.    FCC Notice of Proposed Rulemaking (December 28, 2012) .................................3

    D.    FCC *Inmate Rate Order* (September 26, 2013) ......................................................3

    E.    Stay Entered in Appeal from *Inmate Rate Order* (January 13, 2014) ....................4

    F.    FCC Second Notice of Proposed Rulemaking (October 22, 2014) ........................5

STANDARD OF REVIEW UNDER FED. R. CIV. P. 15 ....................................................6

ARGUMENT ...........................................................................................................6

I.     PLAINTIFFS SHOULD NOT BE PERMITTED TO "FILE AN AMENDED COMPLAINT" ....................................................................................................7

    A.    Plaintiffs' Wish to "Amend" the Complaint Is Actually an Attempt to File a Completely New Lawsuit.............................................................................7

    B.    Plaintiffs Failed to Comply with the Court's Order and Thus Waived Their Right to Litigate Damages Here ......................................................................9

    C.    Plaintiffs Must Expressly Seek Leave to Amend the Complaint and Provide Good Cause Therefor, But Have Not Done So ........................................11

        1.    Plaintiffs Have Not Obtained Consent From Opposing Parties Nor Have They Sought Leave to Amend Their Complaint. ...........................11

        2.    Plaintiffs Have Not Submitted a Proposed Amended Complaint as Required by Local Rules 7(i) and 15.1. .....................................................12

    D.    Plaintiffs' Proposed Amendments Would Unduly Prejudice Defendants and Are Futile ......................................................................................................13

        1.    The Court Should Deny Plaintiffs' Request to Amend, Because The Proposed Amendments Would Unduly Prejudice Defendants...........13

        2.    Plaintiffs' Attempt to Amend to Apply the Inmate Rate Order Is Futile, Because the Order Applies Only Prospectively. ...........................16

　　　　3.　　Plaintiffs' Tort, Antitrust, and Constitutional Claims Were Shown
　　　　　　 to Fail as a Matter of Law, and Amendment Would Not Salvage
　　　　　　 Them. ...................................................................................................17

II.　　THE MOTION IS PREMATURE, BECAUSE THE CORE ISSUE OF
　　　　PLAINTIFFS' CLAIMS IS AGAIN UNDER REVIEW AT THE FCC .........................18

CONCLUSION .........................................................................................................................19

ATTACHMENT A　　WC Docket No. 12-375, *Rates for Interstate Inmate Calling Services*,
　　　　　　　　　　Second Notice of Proposed Rulemaking, FCC 14-158 (rel. Oct. 22, 2014)

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988)  ...........................................................16

*De Sousa v. Dep't of State*,
  840 F. Supp. 2d 92 (D.D.C. 2012), *appeal dismissed sub nom. De Sousa v. U.S. Dep't of State*, No. 12-5064, 2012 WL 5896956 (D.C. Cir. Oct. 29, 2012)....................6, 13, 14, 16

*Lover v. District of Columbia*,
  248 F.R.D. 319 (D.D.C. 2008).................................................................................6, 13, 14

*Mississippi Ass'n of Cooperatives v. Farmers Home Admin.*,
  139 F.R.D. 542 (D.D.C. 1991)................................................................................14

*Parker v. Brown*,
  314 U.S. 341 (1943)...........................................................................................18

*Roberts v. Geren*,
  530 F. Supp. 2d 24 (D.D.C. 2007)............................................................................10

*Rollins v. Wackenhut Services, Inc.*,
  703 F. 3d 122 (D.C. Cir. 2012)...............................................................................12

*Sampson v. Washington Metro. Area Trans. Auth.*,
  No. Civ. A. 04-1767 GK, 2005 WL 3276277 (D.D.C. Aug. 9, 2005) ...................................12

*Schmidt v. United States*,
  749 F.3d 1064 (D.C. Cir. 2014)...........................................................................11, 12

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
  559 F.2d 841 (D.C. Cir. 1977)...............................................................................18

*Winter v. NRDC*,
  555 U.S. 7 (2008)...............................................................................................18

*Wolf v. C.I.A.*,
  569 F. Supp. 2d 1 (D.D.C. 2008)...........................................................................14

**STATUTES AND REGULATIONS**

47 U.S.C. § 201.......................................................................................................16

47 U.S.C. § 202.......................................................................................................16

47 U.S.C. § 415.................................................................................................. 10 n.21

47 C.F.R. § 64.6010 ......................................................................................................4, 5

47 C.F.R. § 64.6020 ......................................................................................................4, 5

47 C.F.R. § 64.6030 .........................................................................................................4

47 C.F.R. § 64.6060 ....................................................................................................5 n.15

Fed. R. Civ. P. 7 ...............................................................................................................1

Fed. R. Civ. P. 15(a)(1) ....................................................................................................6

Fed. R. Civ. P. 15(a)(2) ....................................................................................................6

LCvR 7 ........................................................................................................................1, 12

LCvR 15.1 .................................................................................................................10, 12

## OTHER AUTHORITIES

WC Docket No. 12-375, *Rates for Interstate Inmate Calling Services*, Notice of Proposed
Rulemaking, FCC 12-167, 2012 WL 6726736, 27 FCC Rcd. 16629 (rel. Dec. 28,
2012) ..............................................................................................................................3

WC Docket No. 12-375, *Rates for Interstate Inmate Calling Services*, Report and Order
and Further Notice of Proposed Rulemaking, FCC 13-113, 28 FCC Rcd 14107 (rel.
Sept. 26, 2013) ...................................................................................................... *passim*

WC Docket No. 12-375, *Rates for Interstate Inmate Calling Services*, Second Notice of
Proposed Rulemaking, FCC 14-158 (rel. Oct. 22, 2014) ............................................5

Securus Technologies, Inc. ("Securus"),[1] through counsel and pursuant to Fed. R. Civ. P. 7 and LCvR 7, responds to Plaintiffs' Motion to Reopen and Lift Stay Temporarily filed by Plaintiffs on October 27, 2014 (Dkt. 139) ("Pls.' Motion").  The Court should deny the Motion, because it (1) presages an improper attempt to transform this case into a wholly different set of claims, (2) raises once again a question that is under active review at the expert agency, the Federal Communications Commission, whose guidance the Court previously has requested, and (3) would impose a needless burden on both the Court and the Defendants.

## BACKGROUND

### *"However, this is not a dispute about rates."*[2]

Plaintiffs styled this case as an antitrust suit for exclusive dealing, with pendent constitutional and tort claims, in their Complaint.  When, two years after the Court stayed this case, Plaintiffs sought the expert input of the Federal Communications Commission ("FCC"), the question they posed regarded only the legality of exclusive contracts for inmate telecommunications services.  That question is under active review at the FCC at this time, as are the questions whether site commissions should be permitted and what are the appropriate rates for inmate telephone calls.

Securus provides a brief synopsis of Plaintiffs' efforts at the FCC since the stay and of the FCC's continued review of the rates, costs, and contractual arrangements in inmate telecommunications.

---

[1]     As Securus explained in the Consent Motion for Extension of Time and Incorporated Memorandum, Dkt. 145 (Nov. 12, 2014), it acquired the stock and asserts of named defendant Evercom Systems, Inc. in late 2004, just before this case was administratively closed.

[2]     Dkt. 54, Pls.' Mem. in Opp. to Motions to Dismiss and/or Transfer of CCA, Evercom, AT&T and MCIWorldCom at 6 (Sept. 21, 2000) (emphasis added).

**A.      Petition for Rulemaking (October 31, 2003) – "[P]etitioners request that the Commission prohibit exclusive inmate calling service agreements"**

Plaintiffs' first public request for relief at the FCC was a petition for adoption of a new rule prohibiting "privately-administered prisons" from entering into exclusive contracts with inmate telecommunications service providers.[3]  The FCC took comment on this petition in 2004.

This Wright Petition I focused solely on the "exclusive service arrangements and restrictions on inmate calling options."[4]  Plaintiffs argued that "the penological justifications for exclusive inmate calling service agreements can no longer be substantiated and are pretextual[.]"[5]  They appended an affidavit from a telecommunications consultant who was "asked to examine whether competition would work in the prison calling environment."[6]

Wright Petition I made clear that this lawsuit was about an alleged lack of competition in the inmate telecommunications industry.

**B.      Alternative Rulemaking Proposal (February 28, 2007) – "[E]stablish benchmark rates for long distance prison inmate calling services"**

In 2007, Plaintiffs made a second public request to the FCC, offering an "alternative proposal" in the form of suggested "benchmark rates" for interstate inmate calls.[7]  Plaintiffs emphasized that they were not withdrawing Wright Petition I, but rather were "provid[ing] the Commission with another possible solution" regarding inmate telecommunications services.[8]

---

[3]      Dkt. 132, Third Report to the Court (Feb. 24, 2004), Attachment at 1 ("Wright Petition I").

[4]      Wright Petition I at 3.

[5]      *Id*. at 4.

[6]      Wright Petition I, Affidavit of Douglas A. Dawson ¶ 3 (Oct. 29, 2003).

[7]      CC Docket No. 96-128, Petitioners' Alternative Rulemaking Proposal at 5 (Feb. 28, 2007) ("Wright Petition II").

[8]      *Id*.

The FCC took comment on this petition in 2007.

**C.     FCC Notice of Proposed Rulemaking (December 28, 2012)**

The FCC decided to "grant" Wright Petitions I and II in the form of issuing a Notice of Proposed Rulemaking to "consider whether changes to our rules are necessary to ensure just and reasonable [Inmate Calling Services] rates for interstate, long distance calling at publicly- and privately-administered correctional facilities."[9]

The NPRM sought comment on a number of possible regulatory measures that the FCC could take with regard to inmate telecommunications service.  They included the adoption of rate caps, a rule prescribing what are recoverable costs of service, as well as the proposal in Wright Petition I for mandating a multi-provider system for these services:

> How would competitive ICS services be provided?  The First Wright Petition also argued that the collect calling-only limitations imposed by many confinement facilities increase costs to both ICS providers and inmates that are not outweighed by corresponding benefits and that such limitations should therefore be prohibited.   To the extent ICS is still limited to collect calling in some correctional facilities, we seek comment on the rationale behind this restriction.[10]

Comments were filed in March and April 2013.

**D.     FCC *Inmate Rate Order* (September 26, 2013)**

On September 26, 2013, the FCC issued an order that imposed an interim set of rules for interstate calling rates.[11]

---

[9]     WC Docket No. 12-375, Notice of Proposed Rulemaking, FCC 12-167, 2012 WL 6726736, 27 FCC Rcd. 16629 ¶ 1 (rel. Dec. 28, 2012) ("NRPM").

[10]     NPRM ¶ 36.

[11]     WC Docket No. 12-375, Report and Order and Further Notice of Proposed Rulemaking, FCC 13-113, 28 FCC Rcd 14107, 2013 WL 5738782 (rel. Sept. 26, 2013) ("*Inmate Rate Order*").

The FCC did not accept Plaintiffs' invitation to ban exclusive contracts.  In the *Inmate Rate Order*, the FCC considered Wright Petition I and incorporated the resulting record into the new *Rates for Interstate Inmate Calling Rates* docket.[12]  But Plaintiffs plainly failed to persuade the FCC that it could or should hold that correctional facilities may not continue the single-provider system for inmate telecommunications services.

The FCC did adopt six new rules for inmate telecommunications, the most forceful of them being:

- Rule 64.6010 – Rates for inmate calling and for account-related transactions "must be based only on costs that are reasonably and directly related to the provision of ICS."  47 C.F.R. § 64.6010.

- Rule 64.6020 – Setting *interim* "safe harbor" calling rates of $0.12 per minute for debit calls and $0.14 per minute for collect calls (for a 15-minute call, no more than $1.80 and $2.10, respectively).  47 C.F.R. § 64.6020.

- Rule 64.6030 – Setting *interim* rate caps of $0.21 per minute for debit calls and $0.25 per minute for collect calls (for a 15-minute call, no more than $3.15 and $3.75, respectively).  47 C.F.R. § 64.6030.

Attached to the *Inmate Rate Order* was a Further Notice of Proposed Rulemaking seeking comment on "additional reforms including further rate reductions."[13]  The FCC made clear that the safe harbors and rate caps were temporary, and that "cost-based permanent safe harbors and rate caps" now must be adopted.[14]

### E.    Stay Entered in Appeal from *Inmate Rate Order* (January 13, 2014)

Several inmate telecommunications companies and law enforcement officials appealed the *Inmate Rate Order* to the U.S. Court of Appeals for the D.C. Circuit on the grounds

---

[12]    *E.g.*, *Inmate Rate Order* ¶ 9 ("In 2003, Mrs. Wright and her fellow petitioners … filed a petition with the Commission seeking to initiate a rulemaking to address high ICS rates.  The petition sought to prohibit exclusive ICS contracts and collect-call-only restrictions.").

[13]    *Inmate Rate Order* ¶ 152.

[14]    *Id.* ¶ 154.

that the order exceeded the FCC's authority, was contrary to law, and was arbitrary and capricious.  All appellants sought a stay of the order on an expedited basis.

The D.C. Circuit stayed Rules 64.6010 and 64.6020 on January 13, 2014.[15]  The appeal remains pending, with final briefs due December 19, 2014.  Thus, the rules requiring "cost-based rates" and imposing the safe harbors are not effective.

### F.    FCC Second Notice of Proposed Rulemaking (October 22, 2014)

The FCC completely re-opened its review of inmate telecommunications in the Second Notice of Proposed Rulemaking released October 22, 2014.[16]  The topics on which the FCC seeks comment include:

- Whether the payment of site commissions by inmate telecommunications service providers to correctional facilities should be prohibited.  *E.g.*, Second FNPRM ¶¶ 21, 31, 38.

- What should be the final rate caps for interstate calls, summarizing various proposals submitted by carriers and interested parties.  *E.g.*, *id.* ¶¶ 64, 66-68.

- Whether the FCC should adopt calling rates for local and intrastate long distance inmate calls.  *E.g.*, *id.* ¶¶ 48, 61-66.

- Whether the FCC should prohibit exclusive contracts for inmate telecommunications services.  *Id.* ¶¶ 113-115.

In brief, every regulatory underpinning of Plaintiffs' claims, and of the new claims Plaintiffs want to bring, is under active consideration at the FCC.  The expert agency to whom the Court looked for guidance in 2001 is simply unable to give any guidance at this time.

---

[15]    *Securus Techs., Inc., et al. v. FCC*, Nos. 13-1280 and consolidated cases, Order (Jan. 13, 2014).  The court of appeals also stayed a rule requiring carriers to file annual reports on their rates and services (47 C.F.R. § 64.6060).

[16]    WC Docket No. 12-375, Second Notice of Proposed Rulemaking, FCC 14-158 (rel. Oct. 22, 2014) ("Second FNPRM") (**Attachment A**).  Comments and Reply Comments will be filed in January 2015.

## STANDARD OF REVIEW UNDER FED. R. CIV. P. 15

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  "[A]ll other cases" require "the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

Although "the court should freely give leave when justice so requires," *id.*, this Court will deny a plaintiff's request to amend its complaint if the amendment would cause "undue prejudice" to the defendant or the amendment would be futile.  *Lover v. District of Columbia*, 248 F.R.D. 319, 322 (D.D.C. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  An amendment may "unduly prejudice a defendant if amendment would ... **'expand[ ] the allegations beyond the scope of the initial complaint.'**"  *Lover*, 248 F.R.D. at 322 (quoting *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999) (emphasis added)).  In addition, an amendment is "futile" when "it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or **could not withstand a motion to dismiss**."  *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 113 (D.D.C. 2012), *appeal dismissed sub nom. De Sousa v. U.S. Dep't of State*, No. 12-5064, 2012 WL 5896956 (D.C. Cir. Oct. 29, 2012) (quoting *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002) (emphasis added).

## ARGUMENT

Plaintiffs advance three reasons for reopening this case: (1) to add counsel; (2) to amend the Complaint; and (3) to take preservation depositions.  The first reason is unavailing and the second reason is inappropriate, rendering the third reason a useless and unnecessary burden.

The first issue requires no lengthy discussion: Plaintiffs can retain new counsel without the Court's assistance or intervention. Formal appearances by counsel are not a prerequisite to dispensing legal advice.

## I.   PLAINTIFFS SHOULD NOT BE PERMITTED TO "FILE AN AMENDED COMPLAINT"

Plaintiffs' request to amend the Complaint "to revise their allegations and claims" is actually an attempt to file a completely different lawsuit. This attempt is improper, unsupportable, and would be extremely prejudicial to Defendants, especially Securus which was not even a party to the lawsuit and is here only to defend 14-year old claims against Evercom.[17] Moreover, whatever claims Plaintiffs now want to lodge are extremely premature, because, as Plaintiffs are aware,[18] all of the FCC's findings, conclusions, and rules are under appeal at the D.C. Circuit and are being revisited by the FCC itself in the Second FNPRM. Allowing "amendment" now would simply waste the Court's resources and embroil Defendants in pointless, likely expensive, litigation.

### A.   Plaintiffs' Wish to "Amend" the Complaint Is Actually an Attempt to File a Completely New Lawsuit

Plaintiffs did not style this lawsuit as a rate case in February 2000, and for good reason. As Defendants demonstrated back then, the filed rate doctrine would preclude this Court from imposing liability on any carrier whose rates were on file with and approved by the FCC:

> Plaintiffs' claims should also be independently dismissed under the 'filed tariff doctrine.' It is undisputed that AT&T has filed tariffs relating to inmate collect-calling with both the FCC and [Oklahoma Corporation Commission], setting out the details of its

---

[17]   Plaintiffs also state that the purpose of amending the Complaint is to add Securus. Pls.' Motion at 6. Securus's voluntary appearance and participation in this case has largely obviated that need.

[18]   Pls.' Motion at 5 ("[Global Tel*Link Corporation], Securus … and others have filed petitions for review of the FCC's Inmate Rate Order.").

rates and terms of service. ... Under the filed tariff doctrine, a legally filed tariff precludes all claims in which a plaintiff asserts a right to a rate other than the filed rate. *See AT&T Co. v. Central Office Tel. Co.*, 524 U.S. 214, 222 (1998); *Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998); *Wegoland, Ltd. v. NYNEX Corp.*, 27 F.3d 17, 19 (2d Cir. 1994).[19]

Evercom expressly adopted this argument in its own motion to dismiss, and it appended its FCC tariff that was in effect for the relevant period of Plaintiffs' claims.[20]

To avoid the filed rate doctrine, Plaintiffs lodged these claims and allegations:

- Violations of the First and Fourteenth Amendments due to "the exclusive dealing agreements created by defendants, plaintiffs and other members of the class are required to use telephone systems that burden more speech than necessary to serve defendants' legitimate governmental interests," and that "[t]he system excludes alternative means of telephone communication."  Compl. ¶ 74.

- Equal Protection violations due to, among other things, defendants' creation of exclusive dealing telephone contracts; "unduly restrictive inmate telephone systems"; and the "provision of inadequate telephone services."  *Id.* ¶ 93.

- Defendants' "exclusive agreements restrict access of consumers who seek alternative means to communicate" thereby producing "anti-competitive effects" in violation of the Sherman Act.  *Id.* ¶¶ 121-22.

In their papers opposing Defendants' various motions to dismiss, Plaintiffs continued to emphasize that their claims lay in antitrust and the U.S. Constitution:

- "The only way the plaintiffs may communicate by telephone with persons incarcerated in these CCA facilities is through an **exclusive dealing telephone system** set up by defendants which charges exorbitant rates ... ."  Dkt. 54 at 1 (emphasis added).

- "Defendants assert ... there are **valid security reasons for restricting telephone usage** ... ."  *Id*. at 2 (emphasis added).

- "In exchange for the right of a particular telephone company to obtain the **exclusive dealing contract** ... ."  *Id*. (emphasis added).

---

[19]    Dkt. 59, Corrected Mem. of Points and Authorities in Support of AT&T's Motion to Dismiss at 29 (May 25, 2000).

[20]    Dkt. 19, Evercom's Mem. in Support of its Motion to Dismiss and, Alternatively, to Sever and Transfer Claims at 6 & Attachment (May 16, 2000).

- "However, this is not a dispute about rates.  It is a dispute about ***choice***."  *Id*. at 6 (emphasis in original).

- "The substantive issue before the Court is straightforward and should be decided on the merits: ***Is there a reasonable, legitimate, penological reason for the defendants' exclusive dealing telephone system, or is the true reason for it to profit off the backs of those persons least able to pay?***"  *Id*. at 7 (emphasis in original).

- "The plaintiffs herein have alleged that the **defendants' telephone system was illegal** under §§ 201 and 202 [of the federal Communications Act]."  Dkt. 81, Pls.' Mem. in Opp. to Defs.' Supp. Mem. in Support of Motions to Dismiss at 2 (Apr. 9, 2001) (defending their "Communication Act Claims").

As shown above in the Background, after the Court imposed the stay in 2001, Plaintiffs took these matters to the FCC in 2003 in Wright Petition I and asked for the exclusive-provider system to be prohibited in private correctional facilities.  The FCC considered that request in 2004 and again in 2013.  It did not grant the request.

Instead, the FCC adopted rules about the rates.  The two core ratesetting rules are still stayed.  The interim rate caps are effective but are under appeal and are being reconsidered by the agency.  Plaintiffs nonetheless apparently want to "amend" the Complaint in order to rely on these 13-month old "new factual and legal developments."  Pls.' Motion at 6.  That would not be an amendment, that would be a fundamental recasting of this lawsuit into a rate case.  In the following sections, Securus demonstrates that Plaintiffs should not be permitted to do so.

It bears mention that the *Inmate Rate Order*, unsettled as it is, is not a "new" legal development.  It was released 14 months ago.  Plaintiffs provide no reason for waiting so long to return to the Court.

### B.  Plaintiffs Failed to Comply with the Court's Order and Thus Waived Their Right to Litigate Damages Here

The Court ordered Plaintiffs to seek relief at the FCC and "to ensure that the issues raised in this lawsuit are presented to the FCC."  Dkt. 95, Order (Aug. 22, 2001).  Plaintifs

stated that they would seek damages at the FCC: "plaintiffs intend to file a separate, stand-alone formal complaint before the FCC under Section 208 of the Communications Act raising the same claims that are presented in the instant case[.]"  Dkt. 106, Plaintiffs' First Report to the Court at 3 (May 1, 2002).  Plaintiffs never did so.  Instead, they filed Wright Petition I.

Plaintiffs decided not to pursue any relief other than the adoption of a new rule prohibiting exclusive contracts.  And then Plaintiffs allowed this case to lie dormant, even after the *Inmate Rate Order* was released on September 26, 2013.  That conduct evidences a waiver. *E.g.*, *Roberts v. Geren*, 530 F. Supp. 2d 24, 36 (D.D.C. 2007) (failure to appeal adverse judgment on particular claims constitutes waiver of right to litigate claims upon remand of remaining claims).

The 13-year hiatus in this case is likewise evidence of waiver.  When the FCC did not issue an order on Wright Petitions I or II, Plaintiffs could have returned to Court to seek its assistance.  Or they could have explained why, as it turned out, the FCC was unable to act.  But to wait 14 years, letting the meter run in silence, cannot reasonably be deemed an adequate pursuit of claims.  To allow Plaintiffs now to demand damages from Defendants that reach back to 1998[21] is the epitome of prejudice.  Securus is perhaps the most injured by this attempt, because it did not even exist when this case was active and could not participate in the motions practice that the other Defendants were able to conduct.  As a matter of equity, then, Plaintiffs' sudden return to Court should not be met easily.

---

[21]     The statute of limitations for claims under the Communications Act of 1934 is two years. 47 U.S.C. § 415.

C.   **Plaintiffs Must Expressly Seek Leave to Amend the Complaint and Provide Good Cause Therefor, But Have Not Done So**

Plaintiffs must obtain leave of court before they can amend their Complaint. They cannot simply attempt to amend the Complaint via the Motion.  In addition, as required by local rule, Plaintiffs must attach a copy of any proposed amendment to a motion for leave to amend.  LCvR 15.1.  Plaintiffs have failed to follow these simple procedural requirements.  The Motion fails on this basis alone.

1.   **Plaintiffs Have Not Obtained Consent From Opposing Parties Nor Have They Sought Leave to Amend Their Complaint.**

Where, as here, a plaintiff can no longer amend its complaint as a matter of right, it must obtain the defendant's consent or seek leave of court before it can amend its pleading. Fed. R. Civ. P. 15(a).  More than 14 years have passed since Plaintiffs filed their Complaint. Dkt. 1 (Feb. 16, 2000).  And Plaintiffs have neither obtained Defendants' consent nor have they sought leave of Court.  Instead, Plaintiffs attempt to circumvent the procedural requirements and request leave through the Motion.  Plaintiffs' attempt is improper and should be denied.

The D.C. Circuit has made clear that although leave to amend should be "freely" granted, "Rule 15(a)—even as liberally construed—**applies only when the plaintiff actually has moved for leave to amend the complaint; absent a motion, there is nothing to be freely given**." *Schmidt v. United States*, 749 F.3d 1064, 1069 (D.C. Cir. 2014) (quoting *Belizan v. Hershon*, 434 F. 3d 579, 582 (D.C. Cir. 2006)) (emphasis added).  Further, Plaintiffs' Motion cannot be construed as a motion for leave to amend: "[n]owhere within that filing [do Plaintiffs] so much as reference Federal Rule 15, nor [do they] otherwise attempt to explain how [they] satisfied the legal standards for amendment." *Id.* at 1069.  Thus, absent a motion for leave to amend, any amendment to Plaintiffs' Complaint will be "without legal effect." *Id.* Accordingly, this Court should deny Plaintiffs' request to file an amended Complaint.

11

2.    **Plaintiffs Have Not Submitted a Proposed Amended Complaint as Required by Local Rules 7(i) and 15.1.**

Even construing the Motion as a motion for leave to amend, Plaintiffs' request still fails because they did not "attach a copy of [their] proposed amended pleading, as required by D.C. District Court Local Civil Rules 7(i) and 15.1." *Schmidt*, 749 F.3d at 1069; *see also* LcVRs 7(i) & 15.1 ("A motion for leave to file an amended pleading *shall be accompanied* by an original of the proposed pleading as amended.") (emphasis added).

The D.C. Circuit regularly affirms the denial of leave to amend when the party fails to attach a copy of the proposed pleading. *E.g.*, *Schmidt*, 749 F.3d at 1069; *Rollins v. Wackenhut Services, Inc.*, 703 F. 3d 122, 130-31 (D.C. Cir. 2012) ("[Plaintiff's] request neither included a proposed amended complaint nor otherwise indicated that she would be able to plead sufficient facts to state a plausible claim for relief.  As a result, 'it could hardly have been an abuse of discretion' for the district court to deny leave to amend." (quoting *Confederate Mem'l Ass'n, Inc. v. Hines,* 995 F.2d 295, 299 (D.C.Cir. 1993)); *see also Sampson v. Washington Metro. Area Trans. Auth.*, No. Civ. A. 04-1767 GK, 2005 WL 3276277 at *4 (D.D.C. Aug. 9, 2005) (Kessler, J.) (dismissing complaint and noting that if Plaintiff wishes to amend, he must file a motion for leave along with the proposed pleading "in conformity with the Local Rules.").

Rather than attach a copy of their proposed amended Complaint, Plaintiffs simply list a number of items that they "may" include in their amended pleading:

- "Plaintiffs *may* seek to add new class representatives or to remove class representatives who have died or are unwilling or unable to actively participate in this case."  Pls.' Motion at 6 (emphasis added).

- "Plaintiffs *may* seek to modify their allegations and claims against the existing Defendants to account for new factual and legal developments."  *Id.* at 7 (emphasis added).

- "Plaintiffs *may* seek to expand the scope of their proposed class to include individuals who have paid for inmate calling services in order to communicate with inmates located in correctional facilities that are not operated by Defendant CCA." *Id.* (emphasis added).

Without a copy of Plaintiffs' proposed amendments, "[D]efendants are left guessing" about what Plaintiffs are going to allege and claim. *De Sousa*, 840 F. Supp. 2d at 114. Accordingly, Plaintiffs' request to amend their Complaint is procedurally deficient and should be denied.

### D.   Plaintiffs' Proposed Amendments Would Unduly Prejudice Defendants and Are Futile

In addition to their procedural failures, Plaintiffs are improperly attempting to transform the nature and scope of their case.  In their original Complaint, Plaintiffs challenged the exclusive nature of inmate telecommunications contracts on antitrust and constitutional grounds.  Now Plaintiffs seek to amend their Complaint to allege violations of the rate caps by retroactively applying the 2013 *Inmate Rate Order*.  This attempt fails as a matter of law.

#### 1.   The Court Should Deny Plaintiffs' Request to Amend, Because The Proposed Amendments Would Unduly Prejudice Defendants.

As demonstrated in Section I.A above, Plaintiffs want to convert this lawsuit from an antitrust suit to a rate case.  Defendants, especially Securus, would suffer extreme prejudice if they were allowed to do so, and thus such amendment should be denied.

"[D]espite the liberal standard for amendment of pleadings that is embodied in Rule 15," this Court may deny Plaintiffs' amendments if they "would unduly prejudice" Defendants.  *Lover*, 248 F.R.D. at 324 (citing *Foman*, 371 U.S. at 182).  As previously stated, "prejudice may result if the proposed complaint 'expand[s] the allegations beyond the scope of the initial complaint.'"  *Id.* (quoting *Parish*, 195 F.3d at 763).

"**Leave to amend is not ... a process of metamorphosis**" and should be denied where "it would permit plaintiff to transform their case into something entirely new." *Mississippi Ass'n of Cooperatives v. Farmers Home Admin.*, 139 F.R.D. 542, 544-45 (D.D.C. 1991) (emphasis added).  This Court has denied leave to amend in a number of instances where the plaintiff's proposed amended complaint is only tangentially related to the original complaint. *E.g.*, *DeSousa*, 840 F. Supp. 2d at 114 (denying leave to amend where plaintiff sought to add claims "concerning the use of classified information" to original complaint which alleged  due process violations "because the resulting action would bear only a tangential connection to the original case"); *Wolf v. C.I.A.*, 569 F. Supp. 2d 1, 10-11 (D.D.C. 2008) (denying motion to amend FOIA complaint to join new defendant and add claims relating to defendants' compliance with federal recordkeeping laws because the "proposed amendments bear no relationship to [the] original case"); *Lover*, 248 F.R.D. at 324 (denying leave to amend complaint to add ten defendants and join five plaintiffs to assert similar civil rights claims for allegedly unlawful police searches because, *inter alia*, "[a]lthough all of the proposed plaintiffs are asserting similar claims ... the Second Amended Complaint would drastically expand the scope of this litigation and would bring the new defendants into a case that is already more than one year old"); *Mississippi Ass'n of Cooperatives*, 139 F.R.D. at 544-45 (denying leave to amend FOIA complaint against former federal agency to the extent plaintiff sought to include race discrimination claims and violations of Administrative Procedure Act).

Here, Plaintiffs wish to amend their Complaint "to transform their case into something entirely new."  *Mississippi Ass'n of* Cooperatives, 139 F.R.D. at 544.  According to the Motion, Plaintiffs want to change their Complaint, which challenged the exclusive contracts

and the "restrictions" placed on inmate telephones, into a case based on the FCC's new interim rate caps. *Compare*, *e.g.*, Compl. ¶¶ 74, 77, 93 *with* Pls.' Motion at 7.

As shown above, Wright Petition I confirms that Plaintiffs' original Complaint focused on the restrictions of the exclusive-provider system. Indeed, in 2003 Ms. Wright "request[ed] that the Commission prohibit exclusive inmate calling service agreements and collect call-only restrictions at privately-administered prisons and require such facilities to permit multiple long distance carriers to interconnect with prison telephone systems." Wright Petition I at 3.

Plaintiffs now seek to amend their Complaint to focus on Defendants' alleged non-compliance (in 1998-2000) with the rate caps adopted in the *Inmate Rate Order* (in 2013). For instance, Plaintiffs state that:

- "The Plaintiffs intend to pursue their long stayed claims for damages in this or another court of competent jurisdiction armed with the necessary determinations from the FCC regarding the reasonableness of the charged rates." Pls.' Motion at 5.

- "[T]he FCC's recent Inmate Rate Order provides additional background and support for the Plaintiffs' claim that the Defendants have violated the FCA by levying unreasonable and excessive charges for inmate calling services." *Id.* at 7.

- "The Inmate Rate Order set strict limits on rates for interstate inmate calling services, concluding that the '[e]vidence in our record demonstrates that inmate phone rates today vary widely, and in far too many cases *greatly exceed the reasonable costs of providing the service.*'" *Id.* at 3 (emphasis in original, internal citations omitted).

- "The Inmate Rate Order explained that limiting rates for interstate inmate calling services would benefit society... ." *Id.* at 4.

The original Complaint in this matter involved a completely different set of claims than those now proposed by Plaintiffs. Accordingly, any proposed amendment alleging

non-compliance with the rate caps would be unduly prejudicial to Securus because it would shift the nature and focus of this litigation.

> **2.      Plaintiffs' Attempt to Amend to Apply the *Inmate Rate Order* Is Futile, Because the Order Applies Only Prospectively.**

The Court should also deny Plaintiffs' request on the ground that any allegations of Evercom's non-compliance with the *Inmate Rate Order* would be futile:  they "are deficient as a matter of law and cannot survive a motion to dismiss."  *De Sousa v. Dep't of State*, 840 F. Supp. 2d at 114.  They are deficient, because Plaintiffs cannot retroactively apply the *Inmate Rate Order.  E.g.*, *Bowen v. Georgetown Univ. Hosp.*, 488 U.S 204, 208-09 (1988).  Thus, contrary to Plaintiffs' assertions, they cannot pursue their "long stayed claims for damages," Pls.' Motion at 5, because the *Inmate Rate Order* imposed **prospective** rate caps.  It cannot apply to a case that was filed 14 years ago.

There is a strong presumption against applying regulations retroactively.  The Supreme Court has stated that "[r]etroactivity is not favored in the law.  Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."  *Bowen*, 488 U.S. at 208.  Here, Plaintiffs cannot rebut this presumption.  The *Inmate Rate Order* has no language that could be construed to establish retroactive liability.  And conspicuously absent from Plaintiffs' Motion is any explanation as to why the 2013 *Inmate Rate Order* should apply to 14-year old claims.

Because the *Inmate Rate Order* must be applied on a prospective basis, Plaintiffs' attempt to rely on that order for the purpose of seeking more than 16 years' worth of refunds would be an unlawful retroactive application of regulatory law.  It would not withstand a motion to dismiss.  Amendment should therefore be denied as futile.

### 3.    Plaintiffs' Tort, Antitrust, and Constitutional Claims Were Shown to Fail as a Matter of Law, and Amendment Would Not Salvage Them.

Plaintiffs' claims under the First Amendment, Due Process clause, Contracts Clause, and the Equal Protection clause, as well as their claims in antitrust and torts, all fail as a matter of law.  Defendants' motions to dismiss demonstrated that inmates and called parties do not have a constitutional right to use their phone company of their choosing,[22] nor are restrictions on inmate phone usage a violation of due process or equal protection of the laws.[23]  Plaintiffs' Tortious Interference with Contract claim fails for the same reason.  In addition, the *Parker* doctrine grants immunity to government and quasi-government contracts from antitrust liability.[24]  Finally, as stated in Section I.A above, the filed tariff doctrine bars claims for damages stemming from lawfully tariffed rates, such as those Evercom had on file at the FCC, which disposes of the Unjust Enrichment claim.

The only claim that was at all viable was Plaintiffs' claim under the Communications Act that exclusive contracts and security restrictions were unjust, unreasonable, and discriminatory in violation of Sections 201 and 202.  When it sought the expert guidance of the FCC pursuant to the Court's instruction, Plaintiffs did not prevail.  Exclusive contracts have not been banned.  That claim thus has failed as the law stands today.

For these reasons, amending the remainder of the Complaint would be futile, in addition to prejudicial, and therefore should be denied.

---

[22]     *E.g.*, Dkt. 59, AT&T Mem. at 15-20 (citing, *inter alia*, *Gilday v. Dubois*, 124 F.3d 277, 293 (1st Cir. 1997); *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir.), *cert. denied*, 493 U.S. 895 (1989)).

[23]     *E.g.*, *id*. at 23-24 (citing, *inter alia*, *Murray v. Dosal*, 150 F.3d 814, 818 (8th Cir. 1998), *cert. denied*, 119 S. C. 1467 (1999); *Gillet v. King*, 931 F. Supp. 9, 15 (D.D.C. 1996)).

[24]     *E.g.*, *id*. at 27-29 (citing *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980); *Parker v. Brown*, 314 U.S. 341 (1943)).

## II.   THE MOTION IS PREMATURE, BECAUSE THE CORE ISSUE OF PLAINTIFFS' CLAIMS IS AGAIN UNDER REVIEW AT THE FCC

To the extent that Plaintiffs intend to recommence litigating the claims which they actually lodged in 2000, their efforts are premature.  The entirety of the *Inmate Rate Order* is unsettled.  The D.C. Circuit already stayed its most potent rules which, taking into account the very strict standard for obtaining a stay of agency orders,[25] is a strong indication that the order will be vacated or reversed.  Simultaneously, the FCC has reopened every possible issue regarding inmate calling services, including the exclusive-provider system, and is committed to moving expeditiously to release an order within months of receiving comments in January 2015.

Allowing Plaintiffs to reopen this case now only invites waste and expense.  Nobody knows what will be the applicable law, setting aside the fact that settled jurisprudence prohibits Plaintiffs from applying it retroactively.  Plaintiffs' cursory observation that "it is likely" that recent cases seeking to apply the *Inmate Rate Order* will be referred to the Multidistrict Litigation Panel[26] is not a reason to recommence this litigation: those cases actually are rate cases, not antitrust cases.  And going forward with any of those other lawsuits would be as wasteful and senseless and it would be to reopen this one.

Finally, to the extent that Plaintiffs wish to secure the sworn statements of "some of the proposed class representatives … including lead [putative] class representative Martha Wright,"[27] reopening this lawsuit is in no way a condition precedent to that action.  Plaintiffs can

---

[25]     Movants must make a strong showing of both irreparable harm and likelihood of success on the merits in order to obtain a stay.  *E.g.*, *Winter v. NRDC*, 555 U.S. 7, 22 (2008) (stay is "extraordinary remedy" requiring "clear showing" that movants are "entitled to relief"); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977).

[26]     Pls.' Motion at 7.

[27]     *Id*.

take those sworn statements at any time.  If they are concerned that the putative class

representatives "have reached advanced ages," *id*., perhaps it would be wise for Plaintiffs to take

them right away, because they will bear the burden of proof for their claims.  One also hopes that

Plaintiffs have collected all of the class representatives' documents and materials for

safekeeping.  Those preservatory measures need not wait for the Court.

## <u>CONCLUSION</u>

For all these reasons, the Court should deny Plaintiffs' Motion.

Dated:  November 24, 2014                    Respectfully submitted,


By:  /s/ Stephanie A. Joyce
Stephanie A. Joyce (D.C. Bar 464778)
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006
Telephone: 202.857.6081
Facsimile: 202.857.6395
Email: Stephanie.Joyce@arentfox.com

## CERTIFICATE OF SERVICE

   I, Stephanie A. Joyce, hereby certify that on this 24th day of November 2014, a copy of the foregoing *Response to Plaintiffs' Motion to Reopen and Lift Stay Temporarily* was served on all counsel of record via the ECF system.

             _/s/_ Stephanie A. Joyce    
             Stephanie A. Joyce