UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARTHA WRIGHT, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:00-cv-00293(GK) |
| ) | |
| CORRECTIONS CORPORATION OF ) | |
| AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

On May 15, 2015, Plaintiffs filed a Motion for Leave to File a First Amended Class Action Complaint ("Motion") [Dkt. No. 178]. They seek to reduce their original 12 counts to three while greatly expanding the scope of the proposed class, as well as to update the Complaint to reflect changes to the Parties' situations over the last fifteen years. Defendants Securus Technologies, Inc. ("Securus") and Corrections Corporation of America ("CCA") have filed responses in opposition to Plaintiffs' Motion [Dkt. Nos. 180, 181], and Plaintiffs have filed a Reply [Dkt. No. 184]. Upon full consideration of all the pleadings and the entire record herein, the Motion shall be **granted** for the following reasons.

I.   BACKGROUND

On February 16, 2000, Plaintiffs filed this putative class action on behalf of inmates incarcerated at prison facilities owned

-1-

and operated by Corrections Corporation of America, as well as on behalf of family members and friends of the inmates.

In August 2001, the Court ruled that the Federal Communication Commission ("FCC") was "in the best position to resolve the core issues in this case, namely the reasonableness of the rates charged and the feasibility of alternative telephone arrangements in CCA facilities." Memorandum Opinion at 10-11 [Dkt. No. 94]. On November 5, 2001, the Court entered an Order staying the case [Dkt. No. 105].

Since then, Plaintiffs have filed two petitions for rulemaking with the FCC. On September 26, 2013, the FCC issued its Report and Order and Further Notice of Proposed Rulemaking ("Inmate Rate Order"). Rates for Interstate Inmate Calling Services, 78 Fed. Reg. 67956 (Nov. 13, 2013) (to be codified at 47 C.F.R. pt. 64).

On November 14, 2013, Securus, a Defendant in this lawsuit under its former name Evercom, and others filed Petitions for Review of the FCC's Inmate Rate Order with the United States Court of Appeals for the District of Columbia. Securus Tech., Inc. v. FCC, 13-1280 (D.C. Cir. filed Nov. 14, 2013). In response to the FCC's uncontested motion to hold the case in abeyance pending the agency's adoption of permanent inmate calling reforms, the Court of Appeals stayed the appeal on December 16, 2014. See Securus, 13-1280 [Dkt. Nos. 1526582, 1527663]; see also Rates for Interstate

<u>Inmate Calling Services</u>, Second Further Notice of Proposed Rulemaking, 29 FCC Rcd 13170, 2014 WL 5408460.

On October 27, 2014, Plaintiffs filed a Motion to Reopen and Lift Stay Temporarily [Dkt. No. 139]. On February 13, 2015, while the Motion to Reopen was pending, Plaintiffs also filed a Motion to Transfer the case to the Western District of Arkansas [Dkt. No. 163], which Defendants opposed [Dkt. Nos. 165, 166, 167]. The Court granted Plaintiffs' Motion to Reopen on April 30, 2015 [Dkt. No. 177]. On May 15, 2015, Plaintiffs filed the present Motion for Leave to File an Amended Complaint. See Motion at 1; First Amended Class Action Complaint ("First Amended Class Action Complaint" or "Am. Compl.") [Dkt. No. 178-2]. On May 18, 2015, the Court denied Plaintiffs' Motion to Transfer [Dkt. No. 179].

## II. STANDARD OF REVIEW

### A. Leave to Amend

The amendment of pleadings in civil matters is governed by Rule 15 of the Federal Rules of Civil Procedure, which states that the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant or deny leave to amend rests in the sound discretion of the trial court; however, it is an abuse of discretion to deny leave without a sufficient justification for doing so. <u>Firestone v. Firestone</u>, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)). Sufficient justifications include "undue delay,

bad faith or dilatory motive ... repeated failure to cure deficiencies by [previous] amendments ... [or] futility of amendment." Id. (quoting Foman, 371 U.S. at 182).

In assessing a motion for leave to amend, the Court is required to assume the truth of the allegations in the amended complaint and construe them in the light most favorable to the movant. Caribbean Broadcasting Sys., 148 F.3d 1080, 1086 (D.C. Cir. 1998). The party opposing the amendment bears the burden to show why leave should not be granted. Dove v. Washington Metro. Area Trans. Auth., 221 F.R.D. 246, 247 (D.D.C. 2004) (citing Gudavich v. Dist. of Columbia, 22 F. App'x 17, 18 (D.C. Cir. 2001)).

Defendants oppose Plaintiffs' Motion and contend that it should be denied because (1) the proposed amendments are improper and beyond the scope of the initial Complaint, (2) Plaintiffs unduly delayed in seeking to amend their Complaint, (3) the proposed amendments are unduly prejudicial to Defendants, (4) the proposed amendments are brought in bad faith, and (5) the proposed amendments are futile. The Court will address each argument in turn.

Plaintiffs' original Complaint focused on obtaining damages for those who initiated telephone calls to people in correctional institutions operated by CCA, and all prisoners incarcerated in

correctional institutions operated by CCA [Dkt. 1, ¶ 34]. It reads as follows:

> Class (1): Families, Friends, Lawyers and Other Bill Payer Plaintiffs, defined as all persons, corporations and organizations billed for telephone calls initiated by people who presently are, have been or will be confined to a correctional facility operated by CCA.
>
> as well as
>
> Class (2): Prisoner Plaintiffs, defined as all persons who presently are, have been, or will be incarcerated in correctional institutions operated by CCA.

Plaintiffs' First Amended Class Action Complaint contained the allegations set forth above and ¶ 50, which included all persons using Securus telephone systems at non-CCA facilities. It reads as follows [Dkt. No. 178-2]:

> all persons in the United States who, at any time since February 16, 1998, have paid to use telephone systems provided by Securus at a CCA facility or who, at any time since May 15, 2013, have paid to use telephone systems provided by Securus at a non-CCA facility, in order to make or receive telephone calls involving a person incarcerated in any state in the United States (the "Class").
>
> as well as
>
> all persons who, at any time since February 16, 1997, have paid to use telephone systems at a CCA facility in order to make or receive telephone calls involving a person incarcerated in any state in the United States (the "Class").

## II. DISCUSSION

### A. The Proposed Amendments Do Not Improperly Expand the Scope of the Original Complaint

A key issue to decide in any Motion to Amend is whether Plaintiffs have improperly expanded the scope of the original Complaint.

Securus argues that leave to amend should not be granted "where the proposed amendments would expand the scope of the existing claims." Securus Opp'n at 5 (citing Lover v. District of Columbia, 248 F.R.D. 319, 322 (D.D.C. 2008). This is far too broad a reading of Lover.

That case does not prevent amendment of a complaint whenever the scope of the original claims is expanded. Rather, Lover acknowledges that an amendment "*may* unduly prejudice a defendant if [the] amendment would delay litigation or 'expand[] the allegations beyond the scope of the initial complaint.'" Lover, 248 F.R.D. at 322 (emphasis added) (quoting Parish v. Frazier, 195 F.3d 761, 763 (5th Cir. 1999)). "Prejudice is likely if 'the amended complaint contain[s] new complex and serious charges which would undoubt[edly] require additional discovery for the defendants to rebut.'" Id. (quoting Ferguson v. Roberts, 11 F.3d 696, 706 (7th Cir. 1993)).

Securus argues strongly that Plaintiffs are trying to improperly expand the class. The initial Complaint, as it pertained to Securus, was limited to those CCA facilities to which Securus provided ICS. The new Complaint expands the scope to all correctional facilities in the country served by Securus. While Securus is correct that the First Amended Complaint does greatly[1] increase the proposed class size, a mere increase in class size is neither complex nor inherently prejudicial.

Securus alleges that Plaintiffs are trying to reach back to 1998 for creation of the expanded class and that the proposed amendment expands the case so significantly as to be prejudicial to Defendants. Securus Opp'n at 9. Securus is clearly incorrect about Plaintiffs' attempts to reach back. The Complaint specifically limits damages for the expanded class to May 15, 2013 and onward. See Am. Compl. ¶ 49.

Otherwise, Securus offers little in the way of explaining what prejudice it would suffer from the expanded class, other than the magnitude of the expansion. Given the fact that the expanded class is limited to the two-year statute of limitations, Plaintiffs have gained no unfair advantage from the stay. That Plaintiffs

---

[1] The First Amended Complaint does not provide an exact figure as to the number of correctional facilities it encompasses, but does allege that Securus has had exclusive contracts with "thousands of correctional facilities." Am. Compl. ¶ 21.

could have merely filed a separate case at the time of the Motion on behalf of an expanded class supports this conclusion.

Nor does the expanded class introduce "new complex and serious charges" or delay the litigation. In Lover, the proposed amendment would have further delayed the completion of discovery and the resolution of the case. That is not the situation here. The case, though stayed for many years, is still in the very early stages of litigation and discovery has barely begun, if at all.

Securus also contends that Plaintiffs want to expand the scope by "add[ing] the vague category of 'fees' to the claim." Securus Opp'n at 5. This argument overlooks the fact that Plaintiffs did in fact allege improper fees in the original Complaint. See, e.g., Complaint ¶ 37 (question of "whether the fees imposed by the defendants represent a fair market value for the services or the exploitation of an illegal monopoly"); Id. at 75 (describing rates and surcharges as "a regulatory fee that bears no relation to the actual administrative and enforcements costs incurred"). Though fee allegations are more prominent in the First Amended Complaint, they are not "new complex and serious charges," Lover, 248 F.R.D. at 322 (quoting Ferguson, 11 F.3d at 706).

**B. Amendment Would Not Cause Undue Delay**

As already noted, while leave to amend a complaint is left to the discretion of the court, it is an abuse of that discretion to deny leave to amend unless there is sufficient reason, such as

-8-

"undue delay, bad faith or dilatory motive ... repeated failure to cure deficiencies by [previous] amendments ... [or] futility of amendment." Firestone, 76 F.3d at 1208 (quoting Foman, 371 U.S. at 182).

Defendant CCA argues that Plaintiffs unduly delayed seeking to amend their Complaint and "should not have waited 13 years." CCA Opp'n at 6. CCA contends that it is no excuse that the case was and remains stayed and then referred to the FCC. Id. The Court disagrees. It was entirely reasonable for Plaintiffs to wait to amend their Complaint until the FCC acted upon their rulemaking petitions, particularly in light of this Court's primary jurisdiction ruling. See Memorandum Opinion [Dkt. No. 94]. Significantly, Defendants have not suggested a more appropriate window of time in which Plaintiffs should have sought to amend their Complaint nor did Defendants file any motions to dismiss the Complaint. While thirteen years is obviously a long time, the timing of the Motion is through no fault or delay by the Plaintiffs.

CCA further argues that, at the very least, the 13 months that elapsed between the FCC's Inmate Rate Order and Plaintiffs' Motion constitutes undue delay. CCA Opp'n at 7. CCA does not explain why the Inmate Rate Order triggered an obligation for Plaintiffs to immediately file their amended Complaint.

In fact, Defendant Securus tellingly takes the opposite position from CCA, arguing that Plaintiff's Motion is premature

because the FCC's Inmate Rate Order, on which the First Amended Complaint relies in part, is currently on appeal to the D.C. Circuit (and was stayed on December 16, 2014). See Securus Opp'n at 17-19. By definition, Plaintiffs' Motion cannot be both dilatory and premature.

Plaintiffs have consistently pursued their case before this Court and the FCC. Plaintiffs were under no obligation to file their First Amended Complaint within a certain period of time after issuance of the Inmate Rate Order, and Defendants have not shown how they have suffered any prejudice from the passage of those thirteen months. As our court of Appeals noted in Caribbean Broadcasting, 148 F.3d at 1084,"the prolonged nature of a case does not itself affect whether the plaintiff may amend its complaint."

Nor is Plaintiffs' Motion premature. The fact that the Inmate Rate Order, as already noted, is currently on appeal and stayed at the request of the FCC, does not prevent Plaintiffs from amending their Complaint at this time. Even though it is possible that this case cannot be fully resolved until the appeal of the Inmate Rate Order is resolved, Securus fails to explain why this prevents Plaintiffs from amending their Complaint. Securus claims that "[a]llowing Plaintiffs to reopen this case now only invites waste and expense," Securus Opp'n at 18, but gives no specifics as to what they would be. Moreover, Plaintiffs are not seeking to lift

the stay entirely; it has only been lifted temporarily in order to seek the filing of their amendment of their Complaint.

CCA also argues that Plaintiffs abandoned their claim for damages 13 years ago, when Plaintiffs sought only injunctive relief from the FCC and did not submit complaints to the Enforcement Bureau.[2] See CCA Opp'n at 6. CCA also argues that Plaintiffs' failure to file a formal enforcement claim with the Enforcement Bureau is indicative of undue delay. CCA points to Plaintiffs' Third Report to the Court [Dkt. No. 132] ("Third Report"), submitted on February 24, 2004, in which Plaintiffs expressed their intention to bifurcate their claim. Plaintiffs stated that they would file a formal complaint with the FCC's Enforcement Bureau, "limited to claims regarding unreasonable inmate calling rates and unlawful rebates." They also planned to file a separate petition with the FCC's Wireline Competition Bureau challenging exclusive dealing arrangements between prisons and ICS providers, and the practice of providing only collect calling services without the option of using debit and calling services. Third Report at 2.

Moreover, an enforcement claim is not a prerequisite to seeking damages and CCA fails to cite any case law indicating that

---

[2] CCA is incorrect to characterize this case as "always about injunctive relief, not damages," from its inception. CCA Opp'n at 6 n.1. Plaintiffs clearly sought damages in their original Complaint, see Compl. at 51. CCA argues that Plaintiffs abandoned their damages claim, which obviously supports Plaintiffs' answer that they did in fact seek such changes.

-11-

a formal complaint with the Enforcement Bureau is a prerequisite to filing a damages claim. In addition, as Plaintiffs note, class-wide relief is unavailable before the Enforcement Bureau and therefore an enforcement action would not have resolved Plaintiffs' class damages claims. See Pls.' Reply at 8.

For these reasons, the Court finds that Plaintiffs did not unduly delay in filing their First Amended Complaint.

### C. The Proposed Amendments Are Not Unduly Prejudicial to Defendants

Defendants next argue that allowing Plaintiffs to amend their Complaint would result in prejudice to them. To determine if the threat of prejudice to the opposing party is great enough to warrant denying leave to amend, courts consider "the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted." Childers v. Mineta, 205 F.R.D. 29, 32 (D.D.C. 2001) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, § 1487 at 621, 623 (3d ed. 2001)).

CCA contends, as it did in its undue delay argument, that it will suffer prejudice because Plaintiffs deprived the parties of the opportunity to resolve damages in a timely manner when they did not file a formal complaint for damages with the Enforcement

Bureau. CCA Opp'n at 8. As discussed above, Plaintiffs were not required to seek damages before the Enforcement Bureau as a prerequisite to seeking damages in this case. See supra, 7-8. In addition, since Plaintiffs requested damages in their original Complaint, Defendants were on notice of the claim. Thus, Defendants have shown no resulting prejudice.

CCA alleges that Plaintiffs "are trying to reach back to February 16, 1997, for damages that include the entire 13-year period of the stay." CCA Opp'n at 8. Again, Plaintiffs' original Complaint already included requests for damages and the expanded class is limited to the two-year statute of limitations. Defendants are not prejudiced by Plaintiffs seeking damages. Defendants have been on notice of the potential for damages since the first Complaint was filed. Whether damages--for the entire period of the stay, a shorter time period, or any at all--are appropriate will be decided at a later time and are not cause for denial of Plaintiffs' Motion to Amend.

CCA's next argument is that Defendants will be prejudiced because the evidence has grown stale and witnesses have disappeared. See CCA Opp'n at 8. The evidence issue exists regardless of whether Plaintiffs amend their Complaint or not.

Similarly, CCA argues that it will be prejudiced in its ability to discover evidence and prepare its defense. Id. at 8-9. CCA contends that it is not an ICS provider and does not keep or

maintain billing records that might show who accepted and received ICS calls, or if the charges were actually paid by Plaintiffs. Id. Again, this is not a problem that is unique to the First Amended Complaint; CCA will face these issues under the current Complaint.

Securus argues that Plaintiffs are seeking "to transform their case into something entirely new" through the proposed amendments. Securus Opp'n at 9 (quoting Mississippi Ass'n of Cooperatives v. Farmers Home Admin., 139 F.R.D. 542, 544 (D.D.C. 1991)). Securus cites to several cases in which amendment was denied. In those cases, the proposed amendments were unrelated or only tangentially related to the original case. Id. at 9-10; see e.g., Mississippi Ass'n of Cooperatives, 139 F.R.D. at 544-45 (denying leave to amend FOIA complaint against former federal agency to the extent plaintiff sought to include race discrimination claims and violations of the Administrative Procedure Act). Plaintiffs' proposed amendments here are more than tangentially related to the original Complaint and are readily distinguishable from the cases cited by Securus.

For all the reasons discussed above, the Court finds that Defendants will not be prejudiced by the proposed amendments to the Complaint.

### D. Plaintiffs Proposed Amendments Were Not Brought In Bad Faith

Securus contends that Plaintiffs' Motion should be denied because it is not brought in good faith. Securus argues that Plaintiffs' Motion exhibits bad faith because: (1) it is an attempt to obtain rehearing of the denial of Plaintiffs' Motion to Transfer; and (2) the Motion's goal is to assist the Mojica case in Arkansas rather than seek relief from this Court. Securus Opp'n at 6-7.

Securus's first contention is easily disposed of, as Plaintiffs' Motion was filed before the Court denied Plaintiffs' Motion to Transfer. Therefore it cannot be "an attempt to re-litigate the issue of transfer and circumvent the Court's May 18 decision," as the First Amended Complaint was filed on May 15, 2015. See Securus Opp'n at 6.

Second, Securus contends that Plaintiffs' cooperation with Arkansas counsel for Mojica, and the similarities between the complaints in both cases, is evidence of bad faith. Id. at 7-8. There is absolutely nothing to support this claim. Cooperation among attorneys with similar cases and aspirations of transferring a case are relatively commonplace and the Court does not find them to be indicative of bad faith.

### E.   The Proposed Amendments Are Not Futile.

Securus argues first that Plaintiffs' proposed amendments are futile because the proposed amendments will not cure the circumstances which caused this Court to deny Plaintiffs' Motion for Transfer to the Western District of Arkansas. Id. at 11. Without predicting the merits of future motions to transfer, whether or not the case becomes transferable has no bearing on the *futility* of the case. Securs's argument says nothing about the case's ability to proceed in this Court, and therefore is irrelevant to futility.

Next, Securus argues that the six "Inmate" Plaintiffs in the First Amended Complaint lack standing to lodge the rate claim against Securus. See Securus Opp'n at 11. Securus does not allege that *all* Plaintiffs lack standing, only a subset of them. The First Amended Complaint does not become futile because some Plaintiffs lack standing, so long as the remaining Plaintiffs have it. Therefore, even if Securus was correct that the Inmate Plaintiffs lack standing, others *do* have standing, which means that the Amended Complaint is not futile.

Securus also argues that the "Bill Payer" Plaintiffs did not receive calls from non-CCA facilities, and therefore they cannot support the newly expanded rate claim as it pertains to non-CCA facilities. See Securus Opp'n at 13. Securus fails to explain why this results in the Bill Payers lacking standing or why it renders

the First Amended Complaint futile. Id. Plaintiffs are correct that this issue is more pertinent to class certification and the class representatives' ability to represent the broader class, rather than standing. Pls.' Reply at 12.

Securus next argues that Plaintiffs' claims regarding non-CCA facilities are time-barred. See Securus Opp'n at 13. Securus contends that Plaintiffs cannot relate their non-CCA facility claims back to 2000. Plaintiffs do not seek to do so. Because Plaintiffs limit these claims to the 2-year statute of limitations period, which Securus acknowledges, Securus's time-barred arguments fail. See Am. Compl. ¶ 49 (limiting non-CCA facility class from May 15, 2013, to present); Securus Opp'n at 13-14 (non-CCA facilities claims can reach back only to 2013).

Lastly, Securus argues that any allegations that it failed to comply with the Inmate Rate Order are futile because the Inmate Rate Order has future effect only. See Securus Opp'n at 16. Plaintiffs counter that they are not seeking to have the Inmate Rate Order applied retroactively. If and when the Court determines damages under 47 U.S.C. §§ 206 and 207, the Court will be able to rely on the guidance and expertise provided by the FCC. See Pls.' Reply at 14-15. Because Plaintiffs have not asked for the Inmate Rate Order to be applied retroactively and, in any event, because their requests for damages do not rely exclusively on the Inmate

Rate Order, Defendants have not shown that amendment of the Complaint would be futile.

### F. Equity Does Not Bar Relief

CCA contends that equity estops Plaintiffs from amending their Complaint. See CCA Opp'n at 9-10. CCA's main argument is that Plaintiffs represented to the Court in 2001 when seeking a stay of the case, that Defendants would not be prejudiced by the stay, and that the present Motion does indeed prejudice the Defendants. Id. Since the Court has already rejected Defendants' prejudice arguments, there is no need to address them again under the umbrella of equity.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to Amend their Complaint shall be **granted**. An Order shall accompany this Memorandum Opinion.

January 21, 2016

/s/ Gladys Kessler
Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF