**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ETHEL PEOPLES | ) |
| 555 14th St., S.E. | )   Civil Action No. 1:00-CV-00293 |
| Washington, DC 20003 | ) |
| | ) |
| LAURIE LAMANCUSA | )   Judge:  Gladys Kessler |
| 63 N. Hartford Ave. | ) |
| Youngstown, OH 44509 | ) |
| | ) |
| ULANDIS FORTE | ) |
| 6403 7th St., N.W. | ) |
| Washington, DC 20012 | ) |
| | ) |
| CHARLES WADE | ) |
| 647 G St., S.E. | ) |
| Washington, DC 20003 | ) |
| | ) |
| DOROTHY WADE | ) |
| 647 G St., S.E. | ) |
| Washington, DC 20003 | ) |
| | ) |
| MELVIN TAYLOR | ) |
| (Address Currently Unknown) | ) |
| | ) |
| EARL PEOPLES | ) |
| FCI Fairton | ) |
| (P.O. BOX 420 FAIRTON, NJ 08320) | ) |
| | ) |
| DARRELL NELSON | ) |
| FCI Schuykill | ) |
| (PO Box 759 Minersville PA 17954-0759) | ) |
| | ) |
| JACKIE LUCAS | ) |
| 4213 7th Street S.E. Apt. 201 | ) |
| Washington, D.C. 20032 | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| v. | ) |
| | ) |
| CORRECTIONS CORPORATION OF | ) |
| AMERICA, | ) |
| 10 Burton Hills Blvd. | ) |
| Nashville, TN 37215 | ) |

|  | ) |
| --- | --- |
| SECURUS TECHNOLOGIES, INC., | ) |
| 1999 Bryan St., Ste. 900 | ) |
| Dallas, TX 75201 | ) |
|  | ) |
| *Defendants.* | ) |
|  | ) |

## FIRST AMENDED CLASS ACTION COMPLAINT

1.      Plaintiffs, on behalf of themselves and others similarly situated, bring this class action under the Federal Communications Act, 47 U.S.C. § 201, *et seq*., (the "FCA"), the District of Columbia common law of unjust enrichment, and the District of Columbia Consumer Protection Procedures Act against Defendants Securus Technologies, Inc., and Corrections Corporation of America ("CCA") (collectively, "Defendants") challenging Securus's imposition of excessive and unreasonable charges for inmate calling services ("ICS") and related unreasonable conduct.

2.      These excessive charges, which are most often borne by family members of inmates who have not themselves been convicted of any crime, are disconnected from the legitimate costs of providing inmate calling services.  Rather, excessive ICS rates are the product of the high profits that ICS providers extract from Plaintiffs who have no alternatives, and of the commissions or kickbacks paid to private correctional companies and state and local governments in exchange for the exclusive contracts that ensure an absence of competition.  The ICS industry's use of exclusivity arrangements has facilitated the funneling of kickbacks from inmates and their families at up to 96% of ICS revenues.  Meanwhile, the ICS market has grown to more than $1.2 billion annually.

3.      The Federal Communications Commission (the "FCC") found Securus's ICS

charges to be "unreasonably high, unfair, and far in excess of the cost of providing service."[1] The FCC further concluded that companies like Securus "exploited [their] economic position by charging rates for interstate calls greatly exceeding the cost of providing service, in direct violation of the requirements of Sections 201 and 276 of the [FCA] that those rates be just, reasonable, and fair."[2]

## PARTIES

4.      Plaintiff Ethel Peoples is a resident of Washington, D.C.  Her son, Earl Peoples, a resident of Washington, D.C., was incarcerated at Northeast Ohio Correctional Center, which was and is owned and operated by Defendant CCA in Youngstown, Ohio.  Ms. Peoples paid unjust and unreasonable telephone charges to Defendant Securus during the Class Period.

5.      Plaintiff Laurie Lamancusa is a resident of Youngstown, Ohio.  Her ex-husband, Darrell Nelson, was a Washington, D.C. resident before being incarcerated at the Central Arizona Detention Center, in Florence, Arizona, and at the Northeast Ohio Correctional Center, both of which were and are owned and operated by Defendant CCA.  Ms. Lamancusa paid unjust and unreasonable telephone charges to Defendant Securus during the Class Period.

6.      Plaintiff Ulandis Forte is a resident of Washington, D.C., who was incarcerated at Central Arizona Detention Center, in Florence, Arizona.  Mr. Forte paid unjust and unreasonable telephone charges to Defendant Securus during the Class Period.

7.      Plaintiff Charles Wade is a resident of Washington, D.C., who was incarcerated at Torrance Detention Facility in Estancia, New Mexico, which was and is owned and operated by

---

[1] *See In re Rates for Interstate Inmate Calling Servs*., 28 FCC Rcd 15927, 15929 (F.C.C. Nov. 21, 2013) ("Interstate Inmate Calling Servs. II").

[2] *Securus Techs., Inc. v. Federal Communications Commission*, No. 13-1280, Doc. No. 1470786, p. 1 (D.C. Cir. filed Dec. 16, 2013) (the "FCC Opp.").

Defendant CCA.   Mr. Wade paid unjust and unreasonable telephone charges to Defendant Securus during the Class Period.

8.      Plaintiff Dorothy Wade is a resident of Washington, D.C.   Her son, Charles Wade, was incarcerated at Torrance Detention Facility in Estancia, New Mexico, which was and is owned and operated by Defendant CCA.   Ms. Wade paid unjust and unreasonable telephone charges to Defendant Securus during the Class Period.

9.      Plaintiff Earl Peoples is a resident of Washington, D.C., who was incarcerated at Northeast Ohio Correctional Center.   Mr. Peoples paid unjust and unreasonable telephone charges to Defendant Securus during the Class Period.

10.      Plaintiff Darrell Nelson, is a Washington, D.C. resident who was incarcerated at the Central Arizona Detention Center and at the Northeast Ohio Correctional Center.   Mr. Nelson paid unjust and unreasonable telephone charges to Defendant Securus during the Class Period.

11.      Plaintiff Jackie Lucas is a Washington, D.C. resident who was incarcerated at the Northeast Ohio Correctional Center.   Mr. Lucas paid unjust and unreasonable telephone charges to Defendant Securus during the Class Period.

12.      Plaintiff Melvin Taylor is a Washington, D.C. resident who was incarcerated at Central Arizona Detention Center.    Mr. Taylor paid unjust and unreasonable telephone charges to Defendant Securus during the Class Period.

13.      Defendant Securus is a privately held corporation headquartered in Dallas, Texas that provides managed telecommunications services at federal, state, and local correctional facilities throughout the United States. By using these services, inmates can communicate with family members, friends, attorneys, and other approved persons outside the correctional

4

facilities. Securus serves approximately 2,200 correctional facilities in forty-five states and more than 850,000 inmates nationwide.

14.     Securus was formed through the 2004 acquisition of Evercom Systems, Inc. ("Evercom") and T-Netix, Inc. ("T-Netix")—two inmate telephone service giants—by H.I.G. Capital, LLC, a Miami-based private equity firm with more than $1 billion of equity capital under management.  Securus's predecessors consolidated a large portion of the industry through the acquisition of several inmate telephone service providers across the United States in the late 1990s.   When this suit was originally filed, Securus's predecessor, Evercom, provided telecommunications services in the District of Columbia.

15.     Defendant CCA is a Tennessee corporation doing business in the District of Columbia and throughout the United States.  Pursuant to contracts it has entered into with numerous state and local governments, CCA currently owns and/or operates prisons and jails in twenty states, as well as in the District of Columbia.  Defendant CCA has entered into a series of exclusive dealing agreements with various telephone companies, including, but not limited to Defendant Securus.

## JURISDICTION AND VENUE

16.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this matter involves a federal question.  This Court has supplemental jurisdiction over Plaintiffs' state law claims.

17.     Jurisdiction is also proper in Court pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million, exclusive of interest and costs, and at least one Class Member is a citizen of a state other than the Defendants.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants transact substantial business within, and are subject to personal jurisdiction in, this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims asserted herein took place in this District.

## DEFENDANTS' PROVIDED UNREASONABLE INMATE CALLING SERVICES

19.     Correctional institutions, including those owned and operated by CCA, provide inmates with access to pay telephones from which to make telephone calls to families, friends, and counsel.  Inmates and those receiving their calls have three ways to pay for these telephone services: collect, debit, and prepaid options.

20.     Inmates are a captive market for Securus, which provides and/or has provided pay telephone services in prisons, jails, and other correctional facilities.  As noted by the FCC, there are no competitive market forces to constrain the prices set by Defendants.[3]

21.     Securus has secured for itself the right to provide telephone services to hundreds of thousands of inmates through exclusive contracts with thousands of correctional facilities, including those owned and operated by CCA.  As a result of the monopolies created by these exclusive contracts, Securus faces little or no competition to challenge increasing telephone rates.[4]

22.     In return for this monopoly power, Securus provides kickbacks, masqueraded as "commissions," to the contracting correctional facilities, including CCA.  As a result of these contracts providing kickbacks, Securus has served as the sole telecommunications providers for

---

[3] *See In re Rates for Interstate Inmate Calling Servs.*, 28 FCC Rcd 14107, 14129 (F.C.C. Sept. 26, 2013) ("Interstate Inmate Calling Servs. I").

[4] *See* FCC Opp p.3 (stating that "each provider is a monopoly in a given facility").

persons held in many federal, state, and county correctional facilities throughout the United States.

23.     Because of their exclusive provider positions, Securus has been able to exploit Plaintiffs and the Class by charging them excessive rates for calls, as well as unconscionable and undisclosed fees and connection charges, without regard to what other providers of prepaid calling services are charging in the marketplace.

24.     As a result of the absence of competition, "[f]amilies of incarcerated individuals often pay significantly more to receive a single 15-minute call from prison than for their basic monthly phone service."[5]

25.     The market rates for competitively priced prepaid calling cards are approximately $0.01 to $0.02 per minute for calls within the United States.  Similarly, prepaid calling card rates for international calls can be as low as $0.01 per minute, depending upon the country being called.

26.     Securus, however, charges vastly more—as high as $0.89 per minute—for calls within the United States, not including exorbitant per call connection fees.  Securus, likewise, charges exorbitant per minute rates for international calls.

27.     Illustrating the unreasonableness of the rates they charge, Securus purchases its minutes for calls terminating within the United States from connection carriers for less than a penny per minute.  As a result, Securus often resells the minutes it buys at more than 100 times its cost to Plaintiffs and the Class.

---

[5] *See* Cecilia Kang, *FCC May Cut Prison Phone-call Prices*, The Washington Post, Aug. 9, 2013.

28.     Indeed, when commission payments were removed from 2012 cost data provided by Securus to the FCC, its cost-per-minute rate was only $0.04, including all of its operational costs and call transmission costs.

29.     Payment of kickbacks by inmate telephone service providers (such as Securus) is substantial, with reports estimating that kickbacks paid to correctional facilities exceed $103.9 million per year.

30.     Plaintiffs paid exorbitant and unreasonable rates changed by Securus for inmate telephone services during the Class Period and have been damaged thereby.

### AN OVERVIEW OF THE *WRIGHT* LITIGATION

31.     On February 16, 2000, Plaintiffs filed their original class action complaint challenging excessive and unreasonable charges for inmate calling services.

32.     In their original complaint, Plaintiffs sued CCA, Global Tel*Link ("GTL"), and Evercom, as well as AT&T, MCI-Worldcom, and Pioneer Telephone Cooperative, alleging that they violated Plaintiffs' right to free speech under the First Amendment to the U.S. Constitution; Plaintiffs' right to due process of law under the Fifth and Fourteenth Amendments to the U.S. Constitution; the Contract Clause of the U.S. Constitution; the Sherman Antitrust Act, 15 U.S.C. § 1 *et. seq.*; the FCA; and the laws of the District of Columbia.

33.     The claims in the original complaint were asserted on behalf of those who were "billed for telephone calls initiated by people who presently are, have been or will be confined to a correctional facility operated by CCA."  Wright Compl., at ¶ 34.

34.     Defendants subsequently moved to dismiss Plaintiffs' complaint on the ground that the FCC had primary jurisdiction over Plaintiffs' claims.

35.     In an August 2001 order, the Court "conclude[d] that the FCC is clearly in the best position to resolve the core issues in this case, namely the reasonableness of the rates charged and the feasibility of alternative telephone arrangements in CCA facilities."  (Docket Entry No. 94 at 10–11).

36.     This Court initially entered the order as a dismissal and "directed [the parties] to file the appropriate pleadings with the FCC to ensure that the issues raised in this lawsuit are presented to the FCC."  (Docket Entry 95).

37.     On November 5, 2001, however, this Court granted Plaintiffs' Motion to Reconsider and ordered that this case "be stayed, instead of dismissed, pending the proceedings before the FCC."  (Docket Entry No. 105).

38.     While the case was stayed, the Court dismissed Defendants Pioneer and GTL on the ground that they did not fall within the Court's personal jurisdiction; no other Defendants were dismissed.

39.     The case was administratively closed sometime after the dismissal of GTL.

40.     Shortly after this suit was referred to the FCC, the parties met with FCC staff to discuss the appropriate means by which the Plaintiffs' allegations might be raised before the FCC.  After protracted discussions, it was determined that the Plaintiffs should address policy matters, including determinations of whether rates were unjust and unreasonable, through the rulemaking process.

41.     Accordingly, on November 3, 2003, several of the Plaintiffs, along with others, ("Petitioners") filed a Petition for Rulemaking or, in the Alternative, Petition to Address Referral

Issues in Pending Rulemaking ("First Wright Petition").   In the First Wright Petition, the Petitioners sought to initiate rulemaking to address the high cost of inmate calling services.[6]

42.     On December 31, 2003, the FCC released a public notice requesting that interested parties submit comments on the First Wright Petition.   The Petitioners filed an alternative petition for rulemaking in 2007 ("Alternative Wright Petition"), seeking to require a debit-calling option in correctional facilities, prohibit per-call charges, and establish rate caps for interstate, interexchange calls.[7]   In 2012, the FCC again issued a notice of proposed rulemaking seeking comment on inmate calling services and on the First Wright Petition and Alternative Wright Petition.[8]

## THE FCC DETERMINED THAT SECURUS'S CHARGES WERE UNREASONABLE UNDER THE FCA

43.     In its September 26, 2013, Report and Order and Further Notice of Proposed Rulemaking ("Inmate Rate Order"), the FCC concluded that ICS providers like Securus "exploited [their] economic position by charging rates for interstate calls greatly exceeding the cost of providing service, in direct violation of the requirements of Sections 201 and 276 of the FCA that those rates be just, reasonable, and fair."[9]

44.     The FCC recognized Plaintiffs' role in spurring it to action, explaining that "[t]his all began with one Washington, D.C. grandmother, Mrs. Martha Wright, who spoke truth to

---

[6] Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996, Petition of Martha Wright *et al*. for Rulemaking or, in the Alternative, Petition to Address Referral Issues in Pending Rulemaking, CC Docket No. 96-128 at 3 (filed Nov. 3, 2003).

[7] Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996, Petitioners' Alternative Rulemaking Proposal, CC Docket No. 96-128 (filed Mar. 1, 2007).

[8] Notice of Proposed Rulemaking, 27 FCC Rcd 16629, Rates for Interstate Inmate Calling Services, WC Docket No. 12-375 (2012).

[9] *See* FCC Opp. at p.1.

power in 2003, and reminded us that one voice can still spur a movement and drive meaningful change."

45.    The FCC characterized "the question before us [as] whether negotiated rates result in unfairly high compensation for ICS providers and unjust and unreasonable rates for end users" and "conclude[d] that they do."[10]

46.    Among other things, the FCC concluded that:

- The FCA "requires that all carriers' interstate rates be just and reasonable. To be just and reasonable, rates must be related to the cost of providing service." *Interstate Inmate Calling Servs. II*, 28 FCC Rcd. at 15929–30; *see also Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14113-15 ("All charges . . . for and in connection with [interstate communication services], shall be just and reasonable").

- The marketplace alone has not ensured that interstate ICS rates are just and reasonable and that they are fair to consumers. ICS Order, at 14131 ¶ 45.

- Millions of Americans have borne the financial burden of unjust and unreasonable interstate phone rates. *Id.*, at 14108 ¶ 1.

- Under existing law, commission payments to correctional facilities are profit-sharing kickback arrangements and "are not a . . . category of . . . costs" recoverable from end-users in the rates charged for interstate telephone calls. *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14135-37.

- Because correctional facilities grant the monopoly franchise partly on the basis of the commission payment offered, "competition" among providers produces increased commission payments and higher end-user charges. *See id.* at 14129.

- As a result, inmate telephone rates have "inflict[ ed] substantial and clear harm on the general public (and not merely on private interests)" and must be rejected under existing legal precedent. *Interstate Inmate Calling Servs. II*, 28 FCC Rcd. at 15938.

- Thus, "*for many years*, interstate [inmate telephone service] rates have been unreasonably high, unfair, and far in excess of the cost of providing service." *Id.* at 15929–30 (emphasis added).

---

[10] ICS Order, at 14108, ¶1 and n. 1, 2.

47.     As demonstrated above, the FCC has unequivocally determined that Defendants have, for many years, violated the FCA.  In fact, as early as 1998 the FCC determined that inmate telephone service rates "must conform to the just and reasonable requirements of Section 201."[11]

## CLASS ALLEGATIONS

48.     Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action pursuant to Fed. R. Civ. P. 23.

49.     For purposes of their claims against Securus under the FCA, Plaintiffs seek to represent a class, defined as follows:

> all persons in the United States who, at any time since February 16, 1998, have paid to use telephone systems provided by Securus at a CCA facility or who, at any time since May 15, 2013, have paid to use telephone systems provided by Securus at a non-CCA facility, in order to make or receive telephone calls involving a person incarcerated in any state in the United States (the "Class").

50.     For purposes of their claims against CCA under District of Columbia law, Plaintiffs seek to represent a class, defined as follows:

> all persons who, at any time since February 16, 1997, have paid to use telephone systems at a CCA facility in order to make or receive telephone calls involving a person incarcerated in any state in the United States (the "Class").

51.     This action is brought and properly may be maintained as a class action pursuant to the provisions of Fed. R. Civ. P. 23(a)(1)-(4) and 23(b)(1), (b)(2), or (b)(3) and satisfies the requirements thereof.

52.     The members of the Class are so numerous that individual joinder of all the members is impracticable.  On information and belief, there are not fewer than tens of thousands

---

[11] *See* Billed Party Preference For Interlata 0+ Calls, 13 FCC Rcd. 6122, 6156 (FCC Jan. 29, 1998) (finding that inmate telephone rates "must conform to the just and reasonable requirements of Section 201").

of persons who have been affected by Defendants' conduct.  The precise number of Class Members and their addresses are presently unknown to Plaintiffs, but may be ascertained from Defendants' books and records.  Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

53.     Common questions of law and fact exist as to the Class, as required by Fed. R. Civ. P. 23(a)(2), and predominate over any questions that affect only individual Class Members within the meaning of Fed. R. Civ. P. 23(b)(3).  The common questions of law and fact include, but are not limited to, the following:

> a.   whether Securus charged unreasonable and unjust telephone rates and fees;
>
> b.   whether Securus charged telephone rates and fees that greatly exceed costs of providing service;
>
> c.   whether Defendants failed to fully and adequately disclose to Plaintiffs and the Class telephone rates and fees that they will be, and have been, charged when Plaintiffs and the Class made or receive telephone calls involving an incarcerated person;
>
> d.   whether, through the acts and practices complained of herein, Securus violated §201(b) of the FCA and regulations thereunder;
>
> e.   whether, through the acts and practices complained of herein, CCA was unjustly enriched;
>
> f.   whether, through the acts and practices complained of herein, CCA violated the District of Columbia Consumer Protections Procedures Act; and
>
> g.   whether Plaintiffs and the Class have been damaged by Defendants' acts and practices complained of herein, and if so, the measure of those damages and the nature and extent of any other relief that should be granted.

54.     Plaintiffs' claims are typical of the claims of the Class they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiffs and the Class have been subjected to the same wrongful practices and have been damaged thereby in the same manner.

55.     Plaintiffs will fairly and adequately represent and protect the interests of the Class as required by Fed. R. Civ. P. 23(a)(4).   Plaintiffs are adequate representatives of the Class because they have no interests that are adverse to the interests of the Class.   Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

56.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.   The damages or other financial detriment suffered by Plaintiffs and each Class Member are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for each Class Member to individually seek redress for Defendants' wrongful conduct.   Even if Class Members could afford individual litigation, individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.   By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

57.     In the alternative, this action is certifiable under the provisions of Fed. R. Civ. P. 23(b)(l) and/or 23(b)(2) because:

   a.   the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendant; and/or

   b.   the prosecution of separate actions by individual Class Members would create a risk of adjudications as to them that would, as a practical matter, be dispositive of

the interests of the other Class Members not parties to the adjudications or substantially impair or impede their ability to protect their interests; and/or

c.  Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to Class Members on a mandatory, class wide basis.

## COUNT I (SECURUS)
### (Violation of the Federal Communications Act, 47 U.S.C. § 201, *et seq*.)

58.    Plaintiffs hereby incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

59.    Under § 201(a) of the FCA, Securus is a common carrier engaged in interstate wire communications for the purpose of furnishing such communication services.

60.    The Communications Act classifies inmate calling services as payphone service. 47 U.S.C. § 276(d).

61.    The telephone rates and fees charged by Securus, as alleged above, are unjust and unreasonable, and thus, violate § 201(b) of the FCA.

62.    Securus's failure to make full and adequate disclosures to their customers of these charges violates 47 C.F.R. § 64.2401 and, therefore, violates § 20l(b) of the FCA.

63.    Securus has not filed its rates with the FCC.

64.    As a direct and proximate result of Securus's violations of the FCA, Plaintiffs and the Class have been damaged in amounts to be determined at trial.

## COUNT II (CCA)
### (Violation of District of Columbia Common Law of Unjust Enrichment)

65.    Plaintiffs hereby incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

66.     As a direct and proximate result of CCA's acts and practices alleged herein, CCA has been unjustly enriched and have obtained money, earnings, profits, and benefits directly from Plaintiffs and the Class to which CCA would not otherwise be entitled and which it would not have obtained but for its charging of rates and fees that are unjust, unreasonable, and greatly exceed market rates and costs of providing services.

67.     CCA's practices were intentional, knowing, malicious, or done with the intent to reap significant benefits at the expense of Plaintiff and the Class.

68.     CCA is not entitled to this enrichment and obtained this enrichment to the detriment of Plaintiffs and the Class.

69.     Plaintiffs and the Class reasonably expected that they would only have to pay market rates and would not have to incur other charges which provide no commensurate benefit to them.

70.     Plaintiffs and the Class have suffered, and will continue to suffer, actual damages and injury—in the form of telephone rates and fees that exceed market rates and costs of providing services—as a result of CCA's unjust retention of proceeds from their acts and practices alleged herein.

71.     Under principles of equity and justice, CCA should be required to restore the above-described unjust enrichment to Plaintiffs and the Class in amounts to be determined at trial.

## COUNT III (CCA)
### (Violation of District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 et. seq)

72.     Plaintiffs hereby incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

73.     CCA has furnished, made available, and directly and indirectly solicited and

offered the sale of inmate callings services.

74.     In charging excessive rates for ICS services, CCA violated the District of

Columbia Consumer Protection Procedures Act ("DCCPPA") by, among other things:

    a.  representing that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;

    b.  making false or misleading representations of fact concerning the reasons for the price of ICS services in comparison to price of competitors or one's own price at a past or future time;

    c.  making or enforcing unconscionable terms or provisions; and

    d.  knowingly taking advantage of the inability of the Plaintiffs and the Class to reasonably to protect their interests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants and

in favor of Plaintiffs and the Class and award the following relief:

    a.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(l), (b)(2), or (b)(3) on behalf of the Class as defined above;

    b.  Declaration, judgment, and decree that the conduct alleged herein:

- constitutes unreasonable and unlawful acts by Securus in violation of the FCA;

- unjustly enriched CCA; and

- constitutes a violation by CCA of the DCPPA .

    c.  Damages to Plaintiffs and the Class to the maximum extent allowed under D.C. and federal law;

    d.  Treble damages against CCA under the DCPPA;

    e.  Punitive damages against CCA under the DCPPA;

f.   Costs and disbursements of the action;

g.   Restitution and/or disgorgement of Defendants' ill-gotten gains;

h.   Pre- and post-judgment interest;

i.   Reasonable attorneys' fees; and

j.   Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs request a jury trial on all issues so triable.


May 15, 2015                                    Respectfully submitted,


                                                /s/ Deborah M. Golden
                                                _____


                                                Deborah M. Golden  (D.C. Bar. No. 470578)
                                                Elliot Mincberg (D.C. Bar No. 941575)
                                                Matthew Handley (D.C. Bar No. 489946)
                                                WASHINGTON LAWYERS' COMMITTEE
                                                FOR CIVIL RIGHTS AND URBAN AFFAIRS
                                                11 Dupont Circle NW
                                                Suite 400
                                                Washington, DC 20036
                                                (202) 319-1000 x108
                                                Fax: (202) 319-1010
                                                Deborah_Golden@washlaw.org
                                                Elliot_Mincberg@washlaw.org
                                                Matthew_Handley@washlaw.org